CAMERON *vs.* CHAPPELL and others.

Where an *acceptance* is given in consideration of a *promise* that the party obtaining the acceptance, will at a specified period deliver to the acceptor a quantity of country produce, the acceptor cannot avail himself of the defence of *usury*, if the acceptance be subsequently, and before maturity, negotiated by the holder at a usurious rate of interest.

THIS was an action on a *bill of exchange*, for $797, drawn by Joseph Strangham, on the defendants, dated 12th December, 1836, payable to his own order five months after date. The defendants accepted the draft *in consideration of a promise* on the part of Strangham, to send the acceptors 600 bushels of wheat, to be shipped on the opening of navigation at Buffalo. The wheat was in *Canada*, and the acceptors resided a *Rochester*. Strangham, before maturity of the bill, had it discounted by an agent of the Commercial Bank of Upper Canada, who charged him beyond the *legal rate of interest* of Canada, *one per cent* for *agency*, in collecting, &c. The defendants insisted, by way of defence, that the bill was accepted merely for the *accommodation* of Strangham, and that consequently it having no legal inception until negotiated to the bank, they could avail themselves of the *usury*. Witnesses were examined on the part of the defendants to establish the facts alleged by them, and that not any wheat was received by the defendants from Strangham. The cause was heard by a *referee*, who reported in favor of the defendants. The plaintiff, in whose name the suit was prosecut-

ed, for the benefit of the bank, moved to set aside the report and for a re-hearing.

*S. Stevens*, for the plaintiff.

*E. Darwin Smith*, for the defendants.

*By the Court*, NELSON, Ch. J.   The only question made in   [ *95 ] the case is whether the defendants are to be regarded as accommo-dation acceptors, and standing in the light of sureties upon the paper, or as having parted with it to Strangham for value, to wit, on an engagement up-on his part to pay the amount at maturity in wheat.   If the former is the true exposition of the case, then the acceptance had no inception till the negotia-tion with the agent of the bank, and, therfore, is tainted with usury—if the latter, it is to be regarded as business paper in the hands of Strangham, and the transfer by him valid within the case of *Cram* v. *Hendricks*, 7 *Wendell*, 569.

No doubt, the promise thus to pay would be binding and constitute a good consideration for the acceptance of the draft, and the taking of it up by the defendants would be but the payment of their own debt, and not money paid for the use of the drawer.   This is abundantly settled in the cases of cross notes or acceptances for the mutual accommodation of the parties—they are respectively considerations for each other.   *Rolfe* v. *Caston*, 2 *H. Bl.* 570. *Cowley* v. *Dunlop*, 7 *T. R.* 565.   *Buckler* v. *Buttivant*, 3 *East*, 72.   *Rose* v. *Sims*, 1 *B. & A.* 521.   *Rice* v. *Mather*, 3 *Wendell*, 62.   *Byles on Bills of Exch.* 62.   *Chitty on Bills*, 443.   Mr. Byles lays down the pro-position thus : if a man gives his acceptance to another, that will be a good consideration for a *promise*, or for another bill, though such acceptance be unpaid.

I have looked attentively into the facts of the case as disclosed by the three witnesses who were present at the arrangement between the parties, and am of opinion that the preponderance is decisively in favor of the con-clusion, that the undertaking of Strangham to deliver wheat in the spring, constituted the consideration of the acceptance.   His own account of it is ex-press and precise, that he was to deliver 600 bushels, to be shipped at Buf-falo.   The other two are less distinct, but in the main, rather confirm than weaken this view of the transaction.   They do not recollect that this precise quantity was fixed upon, but agree that it was the understanding to pay in wheat ; and one states that he thinks the price was not   [ *96 ] to exceed 10*s.* 6*d.* which would bring the quantity about as stated by Strangham himself.

Again ; what affords a strong corroborative circumstance of Strangham's

account, and that he was not the mere agent of the acceptors, as contended, is, that neither of the two witnesses pretend that the acceptance was not to be used except in the purchase of wheat. On the contrary, Alleyn states that it was understood if wheat could not be purchased on satisfactory terms, then Strangham was to put the acceptors in funds to take up the draft at maturity ; impliedly conceding the right to use it as his own for any purpose, and that the acceptors would look exclusively to his personal responsibility for the liabilities they had assumed.

In all the cases to which I have referred in respect to counter bills or notes, it is conceded that there can be no remedy upon the implied promise of indemnity as in the case of principal and surety, or principal and agent, because the party had assumed his liability in consideration of a delivery of notes or acceptances to an equivalent amount, and therefore he must seek his remedy upon them ; that the implied promise was negatived by the facts, and could not be raised *ultra* the bills or notes. This ground is very fully and satisfactorily examined by Lawrence, J. in *Cowley* v. *Dunlop*, and Lord Ellenborough in *Buckler* v. *Buttivant*.

So here, the defendants trusted to the undertaking to purchase and deliver the wheat as the consideration for the acceptance, and will be obliged to look to that for their remedy in case of failure to perform. They made the paper their own by the arrangement, and in taking it up they but pay their own debt.

Upon the whole I am satisfied the referee has mistaken the legal effect of the proof, and therefore the report must be set aside, costs to abide the event.

------

[ *97 ]         *Ehle vs. Judson.*

The transferring to another a *bargain* for the purchase of land is not a good consideration of a note for the payment of money, where there is no *valid agreement* on the part of owner of the land to convey, and where the negotiation with him for the sale of the farm was made without any *request* from the maker of the note.

A mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not a sufficient consideration to support a promise.

THIS was an action of *assumpsit*, tried at the Madison circuit in September, 1838, before the Hon. PHILO GRIDLEY, one of the circuit judges.

The action was by the plaintiff as the holder of a note payable to Elisha Swift, or *bearer*, for the sum of $100, transferred after maturity. The defence set up was *want of consideration*. The defendant had been in negotia-