Fort *v.* Burch.

———————————⋅●⋅———————————

Same Term.   *Before the same Justices.*

## FORT *vs.* BURCH.

By the true construction of the general repealing act contained in the revised statutes, and of the recording act of 1827 embraced in those statutes, the previous recording acts remain in force in respect to prior unrecorded deeds and mortgages ; at least so far as such acts relate to the rule of priority between such deeds and mortgages, or between them and subsequent conveyances ; the former recording acts not being absolutely repealed by such general repealing act, and the recording act contained in the revised statutes not applying to previous deeds and mortgages.

The registry acts are remedial, and must therefore be liberally and beneficially construed.

The general system of legislation upon the subject matter of a statute, may be taken into view, in order to aid the construction of a particular statute relating to the same subject.

An order to confirm a master's report of sale is not necessary, to pass the title to the purchaser.  The title passes by the master's deed ; and the master is authorized to convey after the enrolment of the decree, and before the confirmation of the report of the sale.

Fort *v.* Burch.

The subsequent confirmation of the master's report relates back to the date of the deed executed by him.

Notice to a subsequent purchaser, or mortgagee, of a prior mortgage, must be direct and positive, or implied. A notice which is barely sufficient to put the party on inquiry is not enough. Nor is a suspicion of notice sufficient.

THIS was an action of ejectment, commenced on the 28th of November, 1843. It was tried at the Washington circuit in June, 1848, before Justice Hand. The plaintiff claimed title as a purchaser under a decree of foreclosure in chancery of a mortgage given by William Burch to Lewis Fort, dated April, 1838, acknowledged on the 11th and recorded on the 13th of April, 1838. The condition of the mortgage was that William Burch, &c. should pay to Lewis Fort all damages, &c. which the latter might be liable to pay in consequence of a bond executed by him to James P. Randall. The plaintiff introduced in evidence an assignment of the bond and mortgage from Lewis Fort to James P. Randall, dated the 5th of March, 1840; a certified copy of the enrolled decree in a suit in which Randall was complainant, and Burch and others defendants, foreclosing such mortgage, signed. August 29th, 1843; the master's report of sale; the order of confirmation; a deed from J. G. Britton, master in chancery, to the plaintiff, Garret Fort, acknowledged and recorded the 12th of October, 1843. A notice of lis pendens was filed January 12, 1842. The defendant's counsel moved for a nonsuit, on the ground that the order confirming the master's report of sale was not entered until after the commencement of the suit. This motion was denied. The defendant gave in evidence a mortgage given by William Burch to Jonathan Burr, dated the 30th of April, 1827, duly acknowledged but not recorded, conditioned to pay $500 in two annual payments after the 1st of April, 1827; and copies, of a bill in chancery filed by Burr against Burch September 24th, 1842, to foreclose such mortgage; of the report of the master, of the amount due; and of the report of the sale of the mortgaged premises, with the certificate of the clerk of the 4th circuit, dated November 21, 1844, stating that such papers had been compared with the originals on file and were correct transcripts therefrom and

of the whole of such originals. The defendant's counsel then introduced in evidence a copy of an enrolment of the decree in such suit of *Burr* v. *Burch,* referring to the bill and taxed costs as annexed, and setting forth a copy of the final decree, with a certificate of the clerk, stating that the foregoing was a copy of the decree and history of the case contained in an enrolment on file, &c. The plaintiff's counsel objected to the certificate of the clerk, on the ground that it did not contain the facts required by the statute to make it evidence, and because it did not contain copies of all the enrolled papers. The justice decided that the certificate was sufficient, at common law; to which decision the plaintiff excepted. The defendant then introduced in evidence an exemplified copy of an order confirming the master's report of the sale in the suit of *Burr* v. *Burch,* entered on the 5th of October, 1844 ; a master's deed dated the 1st of February, 1843, from Ira A. Paddock, master in chancery, of the premises in question, to J. Burr, duly acknowledged on the 5th of October, 1844, but not recorded ; a quit-claim deed dated March 27th, 1843, from Burr to William Whiteside, of the same premises, acknowledged and recorded on the day of its date. The defendant moved for a nonsuit, on the ground that he had shown a title out of the plaintiff. The plaintiff insisted that his title was protected by the recording acts. The defendant insisted that there was no law in force which gave the mortgage under which the plaintiff claimed, any preference, by reason of its having been recorded, over the mortgage given to Burr. The justice refused to nonsuit the plaintiff, and directed a verdict to be taken subject to the opinion of the supreme court. To this decision the defendant excepted. The plaintiff insisted that the defendant's title was defective, on the ground that the decree under which he claimed was not enrolled until after the commencement of this suit. The justice decided that the omission to enrol the decree did not affect the title of the purchaser, and if it did, that the mortgagee being in possession, by the defendant, under the Whiteside deed, his mortgage was a defence to the suit, without a foreclosure. To this decision the plaintiff excepted. The defendant then called wit-

Fort *v.* Burch.

nesses to prove notice to Lewis Fort of the prior unrecorded mortgage of Burr. He offered to prove by one Kelsey that Lewis Fort, in 1837, admitted to him that he knew of two mortgages given by Burch to Burr, on the premises in question. This evidence was objected to, because Lewis Fort was a competent witness. The justice sustained the objection, and the defendant excepted. The defendant proved by one Hoag that at the sale under the Fort mortgage, the plaintiff induced such witness to stop bidding for the premises, by proposing to let the witness take the premises in case he, the plaintiff, should bid them off. The plaintiff and Whiteside continued bidding, and the premises were finally struck off to the plaintiff. Whiteside forbid the sale, and gave notice that he had purchased the premises of Burr ; and afterwards bid at the sale, against the plaintiff. The premises in question were sold under the Burr mortgage on the 1st of February, 1843. The master's deed, founded upon such sale, was executed on the 5th of October, 1844. The defendant went into possession as Whiteside's tenant, on the 1st of April, 1843. Lewis Fort was called by the plaintiff as a witness, and testified that when he took his mortgage from Burch he had no knowledge of the prior mortgage to Burr, that he knew of. The defendant insisted that the decree in the suit of *Randall* v. *Burch* and others, was no evidence that the mortgage under which the plaintiff claimed, was due at the time of the making of such decree. The justice decided otherwise, and the defendant excepted. The defendant introduced in evidence a decree of foreclosure of a mortgage from J. P. Randall, dated July 21, 1835, on a part of the premises in question, and proved a sale under the same on the 15th of November, 1841 ; and insisted that by means of such sale the consideration of the mortgage under which the plaintiff claimed failed. The justice decided otherwise, and the defendant excepted. The justice submitted to the jury, as a question of fact, whether Lewis Fort had notice of Burr's mortgage at the time he took his own mortgage from Burch ; and the jury, on this question, found in favor of the plaintiff. The defendant's counsel requested the justice to charge the jury that if the plain-

tiff became the purchaser at the sale under the mortgage from Burch to Lewis Fort, by fraudulently suppressing competition, then the sale was void, and he acquired no title. The justice so charged, but instructed the jury that the testimony of Hoag did not prove the fact sufficiently to raise the question. To this instruction the defendant excepted. The defendant also requested the justice to charge the jury that as the plaintiff had, at the sale, notice of the Burr mortgage, he had no better right than Fort had, and that Fort stood as he would if a bill had been filed against him by Burr, charging him with notice of the prior mortgage ; in which case Fort would have been bound to deny notice, unequivocally ; and a denial of recollection would have been insufficient. The justice charged the jury that the principle referred to was not applicable, and that the defendant was bound to prove affirmatively that Lewis Fort had notice of the prior mortgage, at the time he took his mortgage. To this opinion the defendant excepted. The plaintiff asked the justice to charge the jury that he, the plaintiff, had made out a perfect title, and that as the decree under which the defendant claimed was not enrolled until after the commencement of this suit, no valid deed could be made until after the enrolment, and that therefore the plaintiff was entitled to recover. The justice decided that under the evidence the mortgagee was in possession, and that being so, his mortgage was a sufficient title to be used as a defence against the plaintiff's claim. To this decision the plaintiff excepted. The plaintiff insisted that by Whiteside's bidding at the sale under the Fort mortgage, he, and all claiming under him, were estopped from setting up his title against the one derived under the Fort mortgage. The justice decided that the bidding by Whiteside did not impair the defence under his title, and the plaintiff excepted.

*C. L. Allen*, for the plaintiff.

*C. F. Ingalls*, for the defendant.

Fort *v.* Burch.

*By the Court,* PAIGE, P. J.   The principal question in this case is, whether any recording act was in force after the 31st day of December, 1829, (when the general repealing act of the 10th of December, 1828 took effect,) applicable to deeds and mortgages executed previous to that date.   If all the previous recording acts were absolutely repealed by such repealing act, and if the recording act contained in the revised statutes does not apply to previous deeds and mortgages, then such deeds and mortgages, although not registered or recorded, will be entitled to a preference over all conveyances made and recorded after the 31st of December, 1829.   If such shall be found to be the true construction of the general repealing act of the 10th of December, 1828, and of the recording act adopted as a part of the revised statutes, (1 *R. S.* 756 ; 3 *Id.* 130,) it will elicit, in our community, both surprise and regret.   Such a construction would, in very many cases, shake the security of titles to lands, and the safety of mortgage investments.   Ever since the policy of the registry and recording of mortgages and deeds has been adopted by us, the general opinion and universal belief have been that all laws requiring the registry or record of mortgages or deeds, remained in force, as to all deeds and mortgages to which they were originally made applicable, notwithstanding any subsequent repeal of such laws, or the revision or re-enactment thereof; unless the new recording act was expressly made applicable to such deeds and mortgages.   The policy of the people of this state at a very early day, and long previous to the American revolution, was indicated in favor of the certainty and security as well as the convenience and utility of a registry of mortgages.   The general assembly of the colony of New-York, on the 12th of December, 1753; ( *Van Schaack's ed. of Laws of N. Y. p.* 324,) passed an act providing for the registry of mortgages executed after the 1st day of June, 1754 ; and declaring that the mortgage first entered on the register should be deemed and taken to be the first or prior mortgage, provided it was made bona fide, and upon a good and valuable consideration. This act was continued in force by the 35th article of the constitution of New-York of 1777 ; and was re-enacted nearly

verbatim in an act passed on the 26th of February, 1788. (*Jones & V. ed. of Laws, vol.* 2, *p.* 266, § 4.) The act of February 26, 1788, was, by its provisions, made applicable to all mortgages made previous to its passage, but subsequent to the 1st of June, 1754, and also to all mortgages made after the passage of the act. In 1801, (*Revised Laws of* 1801, *p.* 480,) the act of the 26th of February, 1788, was revised, and its provisions substantially re-enacted. In the revised laws of 1813, (1 *R. L.* 372,) the act of 1801 was re-enacted, and the section in relation to the priority of mortgages was adopted, verbatim. In 1822, the act of 1813 was amended by requiring the mortgage to be recorded, instead of being registered. (*Laws of* 1822, *p.* 261.) The general assembly of the colony of New-York, by an act passed the 30th of October, 1710, authorized deeds to be recorded, and declared that the record of a deed, or a transcript thereof, should be as good and effectual evidence as if the original was produced and proven. (1 *Smith & Liv. Laws,* 34.) In 1794, an act was passed requiring the record of deeds, relating to the military bounty lands, and declaring that every deed not so recorded should be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration, unless the same should be recorded before the recording of the deed or conveyance under which such subsequent purchaser or mortgagee should claim. This act was re-enacted in the revision of 1801. (*Rev. Laws of* 1801, *p.* 478.) The revised act of 1801 required all deeds relating to lands in certain counties, (the military tract,) executed after the 1st of February, 1799, to be recorded. And in the act, the unrecorded deed was declared fraudulent and void against any subsequent *bona fide* purchaser or mortgagee for a valuable consideration. The act contained in the revision of 1801 was re-enacted in the revision of 1813. The act of 1813, like the act of 1801, required all deeds made and executed after the 1st day of February, 1799 to be recorded. In 1823, an act was passed extending the provisions of the act of 1813 to all the counties of the state. (*Laws of* 1823, *p.* 412.) In the revision of the statutes in 1827 and 1828, it was thought desirable to make the rules

of priority the same as it respected both deeds and mortgages. These rules, under the acts then in force, were different. A mortgage not recorded was absolutely void, as against a subsequent bona fide purchaser, although the mortgage may have been subsequently recorded before the record of the conveyance of such purchaser. But in all cases between two deeds, as well as between two mortgages, the deed or mortgage first recorded was entitled to priority. Another distinction existed between mortgages and deeds. A mortgage, although first recorded, if not given in good faith and for a valuable consideration, was absolutely void as against any subsequent mortgagee or purchaser. And an innocent assignee of the mortgage without notice of the fraud, was not, like an innocent purchaser from a grantee in a fraudulent deed first recorded, entitled to a preference over a subsequent purchaser or mortgagee. (*Jackson* v. *Campbell,* 19 *John.* 281. *Revisers' notes to ch.* 3 *of* 2*d part of R. S.*) To abolish these distinctions between deeds and mortgages, and to place them on the same footing, all the previous recording acts in relation to both deeds and mortgages were revised and consolidated in one act, and the term *conveyance* adopted, as embracing both deeds and mortgages. (1 *R. S.* 756, *ch.* 3 *of part* 2, § 1, *and p,* 762, § 38.) The 1st section of the act provides that every conveyance thereafter made, shall be recorded; and that every conveyance not so recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, whose conveyance shall be first duly recorded. This section retains the principle of the previous acts as to priority between two mortgages; and it extends and applies the same principle of priority to deeds and mortgages, as between each other. Section 22 provides that previous conveyances acknowledged or proved in such manner as entitled them to be recorded under the previous laws, may be recorded in the same manner and with the like effect as if that chapter (the recording act in the revised statutes,) had not been passed. And section 23 authorizes previous conveyances not proved or acknowledged, to be proved or acknowledged in the same manner as conveyances thereafter executed, and directs that when so proved, acknow-

ledged or recorded they shall have the like effect. These sections were adopted to extend to previous conveyances not recorded the benefits of the recording act, inasmuch as the 1st section of the act of 1827 was in terms confined to subsequent conveyances. These sections were intended to enable previous purchasers and mortgagees, by recording their deeds or mortgages, to protect themselves against either prior unrecorded or subsequent recorded conveyances. The repealing act of Dec. 10th, 1828, repeals, in terms, the previous recording acts in relation to both mortgages and deeds. (3 *R. S.* 130, § 1, *sub.* 97, 364, 399.) But section 2 (*Id. p.* 155,) provides that nothing therein contained shall be construed to repeal any statute consolidated and published in the revised statutes; and section 5 declares that the repeal of any statutory provision, by that act, shall not affect any act done or right accrued or established, &c. previous to the time when such repeal shall take effect; but that every such act and right shall remain as valid and effectual as if the provision so repealed had remained in force. I cannot persuade myself to believe that the legislature while confirming the policy of the recording acts, and extending their principle, intended, by an unconditional repeal of all the recording acts then in force, to exempt from their operation all previous unrecorded deeds and mortgages; and while professedly attempting to abolish the distinction, as to rules of priority, between mortgages and between mortgages and deeds, which then existed, that they intended to create a still greater distinction between previous and subsequent unrecorded mortgages and deeds. If the previous recording acts were all absolutely and unconditionally repealed, by the repealing act, as the 1st and 4th sections of the new recording act are expressly limited to subsequent conveyances, the result will be, that no recording act will be applicable to previous unrecorded deeds and mortgages, and they must therefore take priority as at common law, according to the times of their execution and delivery. Such a result would lead to great inconvenience, and may be productive of fatal injury, and great injustice to those who have purchased, and made investments upon mortgages, relying upon the records in the

Fort v. Burch.

clerk's office as giving a true history of the title, and incumbrances. A statute is to be construed in conformity to the intent of the legislature, although such construction may seem contrary to the letter. Such intent may be collected from the act itself, from other acts *in pari materia*, or from the cause or necessity of making the statute. A statute ought to be so construed as to suppress the mischief intended to be remedied. And a remedial statute is to be construed liberally. (*Bacon's Ab. tit. Statute I.*) The registry acts are remedial, and must therefore be liberally and beneficially construed. (4 *Cowen*, 605.) The mischief to be suppressed by the recording acts was the perpetration of frauds upon a bona fide purchaser or mortgagee, by means of previous secret conveyances. The statute should be so construed as to make the remedy provided for the mischief effectual. Is it probable that the legislature, while endeavoring to protect bona fide purchasers and mortgagees from this mischief, would intentionally perform only one half the work in hand ? Is it probable that the legislature, while protecting purchasers and mortgagees from prior secret conveyances made after the passage of the act, intended to leave them exposed to secret conveyances made previous to that time? Such an intention cannot be imputed to the legislature. It is at war with their acts, and in conflict with the settled policy of the state in relation to the recording of conveyances. Consequences may be considered, in expounding laws, where the intent is doubtful. It is conceded that this principle should be applied with caution. But it is undeniable " where fundamental principles are overthrown and where the general system of the laws is departed from, that the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects." (*Per Marshall, Ch. J., United States* v. *Fisher*, 2 *Cranch*, 358.)

In the case before the court, if the argument of the defendant's counsel prevails, we must decide that the legislature has expressed with irresistible clearness a design to depart from the settled policy and principles of the recording acts, in relation to all unrecorded deeds and mortgages made previous to the gen-

eral repealing act of 1828. I do not think that such a design has been expressed by the legislature with irresistible clearness. I think we can vindicate the character of the legislature from the imputation of entertaining such a design, while we preserve the symmetry and secure the universality of the application of the recording acts. I think we can maintain that the recording acts in force at the date of the repealing act, were saved by the second and fifth sections of that act, so far as the question of priority between previous unrecorded and subsequent recorded deeds and mortgages is concerned. The 2d section provides that nothing contained in the repealing act shall be construed to repeal any statute consolidated and published in the revised statutes. All the recording acts in relation to both deeds and mortgages were consolidated and published in the chapter of the revised statutes relating to the recording of conveyances, and were to some extent revised in that chapter. The principle of priority as between mortgages, as contained in the acts of 1813 and of 1822, was adopted in such chapter of the revised statutes; although different words were necessarily used, to declare such principle, in order to accomplish the object intended, of making the rules of priority as between deeds and mortgages, the same as between deeds. I am aware that, as a general rule, where a subsequent statute revises the whole subject matter of a former one, and is evidently intended as a substitute for it, although it contains no express words to that effect, it is a virtual repeal of the former statute. (*Bartlett* v. *King*, *Ex'r*, 12 *Mass.* 563.) But the question here does not arise upon a mere revision of the recording acts; it arises upon the construction to be given to the second section of the general repealing act, in connection with the 5th section of that act. What did the legislature intend by the word consolidation, as used in the second section? Did they intend to embrace within that term the recording acts? I do not apprehend that a slight change of phraseology, or the addition of some new and distinct provisions, will deprive a combination in one act of several previous acts relating to the same subject, or of several provisions of one act, of its character of consolidation. The question is

not here upon the strict grammatical meaning of the term consolidation.   But the question is, what meaning did the legislature give to it; with what intent did they use it?   If the legislature intended, by this word, to continue in force the old recording acts in respect to previous unrecorded deeds and mortgages, except so far as the same were inconsistent with the new recording act, then we are bound to decide that the term consolidation embraced the old recording acts, to the limited extent just mentioned.   For we must follow, with reason and discretion, the intent of the legislature, in the construction of the repealing act, although such construction seems to be contrary to the letter of the statute.   A statute should be construed so as to have a reasonable effect, in accordance with the intent of the legislature.   (3 *Mass. Rep.* 523.   5 *Id.* 380.   7 *Id.* 458. 15 *Id.* 205.)   A statute is also sometimes to receive an equitable construction, by enlarging the letter so as to embrace a case within its meaning, where it is within the mischief for which a remedy is provided by the act.   (*Bac. Ab. tit. Statute I.* 6.) Bacon says, "In order to form a right judgment whether a case be within the equity of a statute it is a good way to suppose the lawmaker present; and that you have asked him this question : did you intend to comprehend this case?   Then you must give yourself such answer as you imagine that he, being an upright and reasonable man, would have given.   If this be that he did mean to comprehend it, you may safely hold the case to be within the equity of the statute."   If we test the construction of the general repealing act by this process, we shall have no difficulty in arriving at the conclusion that the term consolidation, in the second section, embraces, to the qualified extent before mentioned, the recording acts then in force.   The accuracy of this conclusion will be confirmed by a comparison of the provisions of the new recording act with those of the previous recording acts.   On examination we shall find that many of the provisions of the old recording acts are either literally or substantially copied into the new recording act.   Thus section 3 of the new recording act is, with one or two exceptions, in the same words as section 3 of the act of the 17th of April, 1822.

Sections 10, 11 and 12 of the new recording act are substantially copies of section 2 and of the last clause of section 1 of the act of April 12, 1813. Section 4 of the new recording act is nothing but a consolidation of the provisions of previous acts in relation to the proof and acknowledgment of deeds. Section 16 and the first clause of section 17, and section 24 of the new recording act are substantially copies of section 5 of the act of April 12, 1813. Sections 22 and 23 of the new recording act, which authorize previous deeds and mortgages which have been proved or acknowledged under the previous laws, to be recorded, and such as have not been proved or acknowledged to be proved or acknowledged and recorded in the manner prescribed by that act, show very clearly the understanding of the legislature that previous unrecorded conveyances were to be postponed to subsequent recorded conveyances. The contrary hypothesis would render these sections, at least so far as they relate to the record of previous conveyances, wholly useless. These sections were adopted to give to previous purchasers and mortgagees, whose conveyances were unrecorded, the benefits of the recording act, to enable them, by recording their deeds and mortgages, to protect themselves against prior unrecorded and subsequent recorded conveyances. If by the absolute repeal of all the previous recording acts, they, upon the principles of the common law, would be entitled to priority over all subsequent conveyances, the provisions for their relief in sections 22 and 23 were unnecessary. And section 22 of the new recording act, which is directly applicable to the mortgage from Burch to Burr under which the defendant claims, that mortgage having been previously executed and acknowledged, necessarily implies that the previous recording acts in relation to mortgages, so far as the record of the mortgage and the question of priority depending thereon is concerned, remained in force. That section provides that the conveyance previously acknowledged or proved shall be entitled to be recorded, in the same manner and with the like effect as if that chapter (the new recording act) had not been passed.

Some light may be thrown upon the question under discussion by an examination of the 5th section of the repealing act.

---

Fort *v.* Burch.

---

That section declares that the repeal of any statutory provision, by that act, shall not affect any act done, or right accrued or established, previous to the time when such repeal shall take effect; but that every such act and right shall remain as valid and effectual as if the provision so repealed had remained in force. Now although we cannot say, as required by the plaintiff's counsel, that Burr's omission to record was an act done, yet in order to carry out the manifest intent of the legislature, cannot we say that the act done and the right accrued referred to, was the acknowledgment of the mortgage and the qualified lien of Burr acquired under his unrecorded mortgage; a lien subject to be postponed to any subsequent mortgage which should be first recorded; and that within the meaning of the section it was the acknowledgment, and this qualified lien of Burr, which was to remain as valid and effectual as if the recording acts had remained in force. That is, they were to remain as valid and effectual as if these acts had continued unrepealed; not more valid and effectual. In other words, the acknowledgment shall remain valid and effectual without a new acknowledgment, and the lien of Burr—such lien as he had under the previous recording acts, a qualified lien, to be postponed to every subsequent recorded mortgage—shall remain as valid and effectual as it was under the previous recording acts, and not more so. Upon this construction of the fifth section of the repealing act, the recording act of the 17th of April, 1822, continued in force, to limit and qualify the lien of Burr, and to preserve, as applicable to his mortgage, the rules of priority established by that act.

A long and uninterrupted practice under a statute is regarded as good evidence of its construction. (*McKeen* v. *Delancy's Lessee, 5 Cranch,* 22.) A general repealing act accompanied both the revisions of 1801 and 1813. (*Laws of* 1801, *p.* 619. *Laws of* 1813, *vol.* 2, *p.* 556.) Such repealing acts only contained a saving clause like that contained in section 5 of the general repealing act of 1828, declaring that the repeal should not affect acts done or rights accrued, without any exception as to statutes consolidated in the revisions of those years. And I

Fort *v.* Burch.

am not aware that it has ever been disputed that the recording or registering acts in force previous to those revisions, notwithstanding the repeal, continued in force as to previous deeds and mortgages, except so far as they may have been inconsistent with the revised acts of those years. And I believe that the uniform practice has been, in searching the records in reference to the purchase of lands, and investments on mortgage, to regard such recording and registering acts as applicable to all deeds and mortgages executed while they were in force; and that upon this assumption, and under the belief that the records in the clerk's office contain a true history of the title to lands, and of the incumbrances thereon, lands are uniformly purchased, and investments on mortgage made. In *Jackson* v. *How*, (19 *John.* 83,) Spencer, Ch. J. says, " with respect to purchasers, they purchase under faith in the title as appearing on the record, and the record is part of their title." And Chancellor Walworth recognizes the principle that the records are a part of the title, and that purchasers and mortgagees have a right to rely on the records as giving a true history of the title. (*Ledyard* v. *Butler; 9 Paige,* 136.)

The general system of legislation upon the subject matter of a statute may be taken into view in order to aid the construction of a particular statute relating to the same subject. (1 *Pick.* 248, 254. 10 *Id.* 241.) The general system of legislation heretofore adopted in relation to the recording acts, when the laws were revised, has been to revise and re-enact in the revised laws the previous recording acts, and to accompany the revision by a general repealing act, saving acts done or rights accrued under the previous acts; and to regard the previous recording acts as remaining in force as to deeds and mortgages executed while they were in existence as laws, except as to such parts thereof as were inconsistent with the new recording acts. In the present case, by deciding that the old recording acts remain in force, as to the rule of priority of previous unrecorded conveyances, no vested right of Burr, or of those claiming under him, will be impaired. Until Burr recorded his mortgage he could only claim a priority over a subsequent recorded mortgage, upon the ground

Fort *v.* Burch.

that the subsequent mortgagee had notice of his prior unre-corded mortgage.   Burr, by not recording his mortgage, as re-quired by the existing recording acts, subjected his mortgage to the liability of being postponed to a junior mortgage which should be first recorded.   And there is no reason why he should be released from this liability, the result of his own negligence ; especially, when, by so doing, the mortgagor will be enabled to perpetrate a fraud upon a subsequent bona fide mortgagee, who took his mortgage without notice of the prior mortgage of Burr. When Burr took his mortgage, the law declared that unless he recorded his mortgage it should be postponed to a subsequent mortgage, in case such subsequent mortgage should be first recorded.   He has no claim, in justice or equity, to be relieved from the operation of that law, to the prejudice of a subsequent mort-gagee who took his mortgage without notice of the prior incum-brance of Burr, and upon the faith that the recording act would protect him against prior secret unrecorded conveyances.   The recording acts are remedial statutes, and must be liberally and beneficially construed.   The act for recording mortgages is a valuable substitute for the English practice of depositing the title deeds with the mortgagee ; and it has effectually protected sub-sequent purchasers and mortgagees from the frauds of the mort-gagor, and from the mischief of prior secret and concealed mortgages.   (2 *John.* 522, 523, *per Kent, Ch. J.   Cruise's Dig. tit.* 15, *ch.* 5, § 11.   *Goodtitle* v. *Morgan,* 1 *Term Rep.* 762.)   No construction should be given to a recording act unless demanded by its plain and unambiguous language, and the manifest in-tent of the lawmakers, to limit or contract its operation.

We can not, I think, for the reasons above stated, avoid com-ing to the conclusion that by the true construction of the general repealing act of 1828, and of the recording act of 1827, the pre-vious recording acts remain in force in respect to previous unre-corded deeds and mortgages, at least so far as such acts relate to the rule of priority between such deeds and mortgages, or be-tween them and subsequent conveyances.

The motion for a nonsuit upon the ground that the order confirming the master's sale was not entered until after the com-

·mencement of the suit, was properly denied. The title passed by the master's deed. The order to confirm was not necessary, to pass the title to the purchaser. The master was authorized to convey after the enrolment of the decree, and before the confirmation of the report of the sale. (*Rule* 111, *Old Chancery Rules.* 4 *Hill,* 173.) But all doubt on the question is removed by the doctrine of relation. The confirmation of the sale related to the date of the deed. (4 *Hill,* 173.) The defendant is a tenant of Whiteside, who is the grantee of Burr, to whom the prior mortgage was given by William Burch. Should the evidence of the enrolled decree, in the suit to foreclose Burr's mortgage, be deemed defective, the defendant, being the tenant of Whiteside, may nevertheless, upon the cases of *Phyfe* v. *Riley,* (15 *Wend.* 253,) and of *Jackson* v. *Bowen,* (7 *Cowen,* 13,) claim the right to protect his possession as the assignee of Burr's mortgage. The deed from Burr to Whiteside carried all the interest of the former as mortgagee, as well in the debt as in the land mortgaged. (6 *Cowen,* 20.) In *Phyfe* v. *Riley,* (*supra,*) it was held that ever since the adoption of the revised statutes, which take away the remedy of the mortgagee by ejectment, the mortgagee in possession may protect such possession by force of his mortgage. This decision may perhaps be questioned, as the mortgage is now considered as a mere security for money ; and as the mortgagor is regarded, both at law and in equity, as the owner of the freehold. (4 *Kent's Com.* 157, 160, *note b.* 2 *Cowen,* 196, 231. 19 *John.* 325. 11 *Id.* 534.)

But I think that the evidence of the proceedings in the suit for the foreclosure of Burr's mortgage was, by the rules of the common law, sufficient. (1 *Phil. Ev.* 386, 392. 5 *Paige,* 304.) The revised statutes do not abrogate any of the common law rules of evidence in relation to the proof of records and judicial proceedings. (5 *Cowen,* 165. 2 *R. S.* 404.) The omission to enrol the decree in the foreclosure suit of Burr can not affect the title of the purchaser under the decree. The title passes by the master's deed. (4 *Hill,* 171.) The evidence of the declarations of Lewis Fort, made in 1837, admitting his knowledge of the

Fort *v.* Burch.

prior mortgage of Burr, was properly rejected. Fort was himself a competent witness to prove such knowledge. (*Alexander* v. *Mahon*, 11 *John.* 185. 15 *Id.* 493.) The declarations and admissions of a former owner of a chose in action or of other personal property, are not evidence against his assignee or vendee. (8 *Wend.* 490. 7 *Id.* 256. 1 *Hill*, 612. 7 *Cowen*, 752.)

The decree in the suit of *Randall* v. *Burch et al.* was evidence that the condition of the mortgage from Burch to Lewis Fort had become forfeited, by the non-payment of the moneys which Burch therein obligated himself to pay. The decree was at least prima facie evidence of such fact.

The objection of the defendant that the consideration of the mortgage from Burch to Fort failed, by means of the foreclosure of the mortgage from S. P. Randall to L. Randall, and the sale of the mortgaged premises under the decree of foreclosure, was not well taken. Burch, in his bond and mortgage to Fort, had assumed to pay $1150 of the mortgage of L. Randall, and the foreclosure of the latter mortgage was founded on the non-payment of that money which Burch ought to have paid. The charge of the justice was unobjectionable.

The evidence of the witness Hoag, in relation to the arrangement made by the plaintiff with him, to induce him to stop bidding at the sale under the Fort mortgage, did not affect the validity of the sale to the plaintiff. The sale was a judicial sale. It was regularly confirmed by the court, and the master's deed founded thereon was executed and delivered to the plaintiff. The cases of *Doolan* v. *Ward*, (6 *John.* 194,) *Wilbur* v. *How*, (8 *Id.* 444,) and of *Thompson* v. *Davies*, (13 *Id.* 112,) cited by the defendant's counsel, were actions in affirmance of contracts, between parties to the same. The tendency of the contracts was to prevent competition at the sale. This rendered the contracts illegal, because they were contrary to public policy. The case of *Howard* v. *Castle*, (6 *Term Rep.* 642,) was an action against a bidder at an auction, to compel him to complete the contract. The contract was held void because the owner had employed puffers to bid for him. The case of *Rexwell* v. *Christie*, (*Cowp.* 396,) was an action by the owner against the auctioneer for

selling a horse at the highest price bid for him, contrary to the owner's express directions not to let him go under a larger sum named. It was held that the action would not lie, because the direction to the auctioneer implied that a person was to be privately employed to bid for the owner. A contract, although illegal, if executed, cannot be rescinded by parties *in pari delicto*. The sale to the plaintiff could only have been called in question in the suit of *Randall* v. *Burch and others*. It can not be assailed in a collateral suit. Its validity has been adjudged by the order of confirmation.

The charge of the justice was correct in relation to the notice to Lewis Fort of the prior mortgage of Burr. The defendant was bound to prove, affirmatively, that Lewis Fort had notice of the prior mortgage. This notice must be direct and positive, or implied. A notice which is barely sufficient to put a party on inquiry is not sufficient. Nor is a suspicion of notice sufficient. (4 *Kent's Com.* 171, 2. *Tuttle* v. *Jackson*, 6 *Wend.* 226, *per Chancellor Walworth*. 3 *Paige*, 437. 1 *Hill*, 568, 571. 10 *John.* 457. 9 *Id.* 163. 8 *Id.* 137; 2 *John. Ch.* 182, *S. C.* 15 *John.* 555, 567. 12 *Id.* 452. 19 *Wend.* 339.) Where a subsequent mortgagee swore, in his answer, that to his belief he did not know of a prior unregistered judgment, when he took his mortgage, it was held not sufficient to justify the court in breaking in upon the registry act, although the defendant was contradicted by one witness. (*Hine* v. *Dodd*, 2 *Atk.* 275. *Pow. on Mort.* 639, 640.)

Whiteside, by bidding at the sale under the Fort mortgage, did not estop himself from disputing the plaintiff's title, derived under that mortgage. Whiteside was in possession of the premises, by his tenant; and he gave notice at the sale that he claimed the premises as a purchaser from Burr. His bidding when every one who bid knew of his claim, could not possibly work any estoppel. (4 *John.* 216.)

Judgment must be rendered for the plaintiff, and the motion for a new trial must be denied.