The most important question in this case is, whether the mortgage of Elias Kane and wife was so registered as to furnish constructive notice thereof to subsequent bona fide purchasers of the mortgaged premises. The court below held the registry to be so defective as to be ineffectual as a notice to subsequentbona fide purchasers, and holding *Page 539 
the defendants to be such, upon this ground alone decided the whole case upon its merits against the plaintiff. I am constrained to say, after a very careful examination of the question, that it seems to me quite clear that the court below erred in holding the registry of this mortgage insufficient to furnish constructive notice of the lien of the mortgage to the defendants, and those under whom they claim. The court below were right in holding that the sufficiency of the registration in this case must be determined by the recording acts as they existed at the time the registration in question was made. (Fort v.Burch, 6 Barb., 60.) This act required the clerks of the different counties to keep a book for registering mortgages, and to enter therein the names of the several mortgagors and mortgagees, the dates of the respective mortgages, the money, the time or times when payable, the description and boundaries of the lands, the times when such mortgages are registered, and a minute of the proof or acknowledgment thereof, and when registering the same they were required to record at length the special power of sale if any be contained therein; and the same section provides, that all persons whomsoever shall have recourse to such register at proper seasons. (1 R.L., 372, § 1.) By the next section it is provided that no mortgage, nor any deed, conveyance or writing in the nature of a mortgage, shall defeat or prejudice the title, or interest of any bona fide purchaser of any lands, tenements or hereditaments, unless the same shall have been duly registered as aforesaid. (1 R.L., 373, § 2.) The object of the registry acts is to give notice to subsequent purchasers of the prior conveyance or incumbrance, and to secure subsequent purchasers and mortgagees against prior secret conveyances and incumbrances. (1 Story's Eq. Jur., § 397; Jackson v. Sharp, 9 John.,
163; Jackson v. Burgott, 10 Id., 457; Jackson v. West,
10 Id., 466.) And consequently where the subsequent purchaser had notice at the time of his purchase of the prior unregistered deed, such prior deed or mortgage shall have preference. (1Caines' *Page 540 R., 82; 8 John., 137; 9 Id., 163; 10 Id., 466.) The registration is deemed constructive notice to the subsequent purchaser, and where the registration act has been substantially complied with, the law charges the subsequent purchaser with notice. The object of the registry act being to secure subsequent purchasers and mortgagees against prior secret conveyances and incumbrances, if the substantial object and design of the act are complied with in the registry, that is all that is required. (1John. Ch. R., 288, 299; 18 John., 544, 564.)
I agree fully with the construction put upon the act under consideration by Chancellor KENT in the case of Frost v.Beekman (1 John. Ch. R., 299), and by Chief Justice SPENCER in the same case, in the court of errors. (18 John., 564.)
The chancellor says: "The true construction of the act appearsto be that the registry is notice of the contents of it and no more, and that the purchaser is not to be charged with the contents of the mortgage any further than they may be contained in the register." He adds, the act, in providing that all might have recourse to the registry, intended that as the correct and sufficient source of information; and that it would be a doctrine productive of immense mischief, to oblige the purchaser to look at his peril to the contents of every mortgage and to be bound by them when different from the contents as declared in the registry. He states the very design, scope and object of the registry in the following language: "The registry was intended to contain within itself all the knowledge of the mortgage requisite for the purchaser's safety." Let us then examine the registry in question, and see if it meets these requirements of the statute. The registry contains the true date and amount of the mortgage, and contains an accurate description and boundary of the premises. It gives the names of the mortgagors, and states they have for and in consideration of $13,000, mortgaged the lands (giving description and boundaries), and then the registry states that if the mortgagors *Page 541 
shall pay or cause to be paid the said sum of $13,000 with lawful interest in the manner specified in a certain bond bearing even date with the mortgage, and executed by Elias Kane, one of the mortgagors, then everything contained in said mortgage shall cease and be void; but in case of default in the payment of all or any part, it then goes on and gives the power of sale in the usual form. The registry also contains a minute of the certificate of the proof of acknowledgment in the following words, "which said mortgage was on the 6th day of May, 1817, duly proved by Elias Kane and Deborah Kane his wife, the mortgagors within named, before Thomas Bridgen one of the masters in chancery of the State of New-York." The name of the mortgagee is not given in the registry, unless the statement at the commencement of the registry shall be deemed to furnish it. It states that the mortgage was "registered for and at the request of Thomas Bloodgood of the city of New-York, acting executor to the estate of Thomas Tom, deceased." Now, it seems to me that this registry contains all that is necessary to answer the objects and purposes of the statute. That it comes up fully to the requirements of the rule stated by Chancellor KENT and Chief Justice SPENCER, in the case of Frost v. Beekman; that in short, this registry contains within itself all the knowledge of the mortgage requisite for the purchaser's safety, and in fact all that it is important for him to know. Had these purchasers examined this registry they would have found that the man from whom they claimed to have title, had mortgaged these premises for $13,000, long before their purchase, and that such mortgage was duly acknowledged and registered, with the power of sale recorded, and that such registry was made for and at the request of Thomas Bloodgood; and had they looked at the index of mortgages, as in all probability they would had they gone to examine for mortgages, they would there have found it stated that Thomas Bloodgood was the mortgagee. It is not very important to determine whether the statement that this *Page 542 
mortgage was registered for Thomas Bloodgood and at his request is to be deemed equivalent to stating that he is mortgagee or not.
These registry acts are remedial statutes and are to be liberally construed, and when the substantial purposes of the act are complied with that is sufficient; and when the registry contains such a statement of the mortgage as the purchaser's safety requires, if he examines the registry, all the beneficial purposes of the act are answered. (1 John. Ch. R., 299; 4Cow., 605; 6 Barb., 69; 18 John., 564; 2 Harr. McHenry,
19.) The next objection to this registry is, that it omits to state the time or times when the mortgage moneys became due. The registry in this respect copies from the mortgage in hæc verba
all that it contains in relation to the time or times when the mortgage moneys are payable.
The mortgage refers to the bond as to the time the moneys are payable, and the registry could not well do more than state all that the mortgage contains as to the times of payment, for I do not see how the clerk could go out of the mortgage to obtain the times of payment, and he is not required to register anything contained in the bond. Be this as it may, however, I cannot think that the omission to state the particular times of payment should be deemed so important as to render the registration invalid.
There is nothing in the objection that the registry does not give such a minute of the certificate of the proof of acknowledgment as the statute requires. All that the statute says is, that the registry shall give "a minute of the certificate ofthe proof of acknowledgment." This the registry does give, as we have already shown. A minute of a written contract or certificate is a very indefinite thing. It is defined to be "a short sketchor note of any agreement or other writing." The statement of this certificate certainly answers this definition. These are all the objections taken to the registry of this mortgage. They are, first, that the mortgagee's name is not given in the registry; second, that the times of payment of *Page 543 
the mortgage moneys are not stated; and, third, that the minute of the certificate of proof of acknowledgment is not comprehensive enough. I think a sufficient answer has been given to them all, and that we must hold the registry sufficient. The registry was sufficient to inform any person who should have recourse to it of every fact in relation to the mortgage necessary to be known by a subsequent purchaser or mortgagee, for his protection.
The objection to the plaintiff's recovery, founded upon a presumption of payment arising from lapse of time, is not well taken. Such presumption can only arise from a forbearance of full twenty years, unexplained by the mortgagee. (1 John. Ch. R.,
386; 5 Id., 552; 4 Kent's Com., 189, note "E"; 10 John.,
417; 12 Id., 245; 3 Barb., 305.) The forbearance from the last payment to the commencement of this suit was but nineteen years, three months and twenty-four days.
It follows, therefore, as a consequence, that the defendants cannot be held bona fide purchasers of these premises without notice of the mortgage in question, for the registration operates as a constructive notice to all subsequent purchasers (1 Story'sEq., § 403); and the obvious policy of the registry acts is to impose upon the party purchasing under such circumstances the obligation to search for prior incumbrances, and where the registry contains within itself all the knowledge of the mortgage requisite for the purchaser's safety, the law charges him with notice of the mortgage. The mortgage was properly executed, and the certificate of the proof of execution is in strict compliance with the requirements of the statute. (2 Barb. Ch. R., 268; 2Cow., 567; 1 Wend., 412; 11 John., 434; 24 Wend., 93; 1Hopk., 239, 267.)
The mortgagors, Elias Kane and wife, had title to the whole of the mortgaged premises at the time of the execution of the mortgage. They first acquired title to one moiety thereof under the will of Cornelius Van Schellyne, and to *Page 544 
the other moiety from Derick Van Schellyne and wife, of the date of June 24, 1816. This deed has a subscribing witness, and the evidence in the case shows that one of the grantors and the subscribing witness were dead at the time of taking the testimony, and that the signatures of the grantors and the subscribing witness are genuine. The execution of the deed being proved, and there being a subscribing witness, the presumption of law is that the deed was delivered at the time it bears date. (2Wend., 317, 318; 5 Id., 533; 1 Denio, 326.) The first moiety was given to the wife of E. Kane in fee by the will of her father, and as they had a child born alive of the marriage, E. Kane acquired a life estate in this moiety; and it is claimed that he had parted with this life estate by his discharge under the two-third act before the execution of the mortgage. There are several answers to this objection. It has not been even attempted to be shown that the title of his wife, Deborah Kane, as devisee and heir of this moiety, had in any way been divested previous to the execution of this mortgage; and when her husband died, and she survived him, she became the legal owner of the whole estate. But it is very questionable whether the parol evidence given before the examiner was competent to divest his title. There is no parol evidence even of any assignment by E. Kane of his estate to an assignee; and, besides, parol evidence is incompetent to divest a title which has been previously proved (4 Wend., 560; 4 Cow., 593; 6 Barb., 607; 3 Comst., 424; 5 Paige, 104); and there is strong evidence to authorize the presumption that he never parted with his title. He was in possession from 1813 to 1829, claiming to own the premises and exercising acts of ownership over them. He made payments on the mortgage in question between 1817 and 1828, and in November, 1826, sold and conveyed one hundred and eleven acres of the premises and received the purchase money and applied it towards the payment of the mortgage. *Page 545 
I have not been able, however, to discover upon what principle the defendants can be permitted to raise this question of E. Kane's title. The most that can be claimed for them is, that by virtue of the sheriff's sale and deed on that decree they acquired the title of Kane; and they stand in no better position than he did, and, being estopped, cannot deny Kane's title. (15Wend., 607; 3 Peters, 47; 19 Pick., 341; 4 Adol. andEllis, 782, 809; 2 Smith's Leading Cases, 540; 2 Barn. andAdol., 278; Pow. on Mortgages, 221, 1074, 1075; Cowp., 601.)
As to the moiety of the premises which the mortgagors acquired by grant from Derick Van Schelleyne and wife, it is proper to remark, that as these premises were conveyed by deed to the husband and wife jointly, the grantees held the fee in severalty with the right of survivorship, and upon the death of her husband Mrs. Kane took the whole fee as survivor, discharged of all claims for her husband's debts (4 John. Ch. R., 431; 10 Id.,
110, 302; 19 Wend., 178; 1 Kent's Com., 132); and the mortgage was certainly a lien on Mrs. Kane's remainder. In the view which I have taken of this case, I have not deemed it important to inquire whether the defendants are or are not to be deemed bona fide purchasers within the meaning of the recording acts, which I think may well be doubted, as John Whittick took the premises purchased by him at sheriff's sale, if the defendants' view of the case be correct, in payment of a pre-existing debt. (4 Paige, 215, 221; 1 R.L., 373, § 2; 10Paige, 170.)
The decree in the suit of John Whittick v. Elias Kane andothers, and the sale, furnish no defence to this suit. That decree did not overreach the plaintiff's mortgage. The bill in that suit was in the nature of a bill to redeem a mortgage by converting an absolute deed into a mortgage; and the chancellor so regarded it. (1 Paige, 206-208.) He declared the deed a mortgage, and directed a referee to take and state an account of the amount due thereon. John Whittick *Page 546 
did not claim in that bill to be a creditor of Cornelius Van Schellyne. He claimed to be the legal owner of the premises, and entitled to redeem; and, indeed, it appears from the master's report on the reference that, instead of C. Van Schellyne being a debtor of John Whittick, he was a creditor; that at the time of his death there was more than $300 due on the mortgage. The chancellor found, however, that he could not allow John Whittick to redeem, because the premises had been alienated and were held by bona fide purchasers, as he held, and he consequently made a personal decree against E. Kane and Derick Van Schellyne for moneys realized by them out of these lands and received after the death of C. Van Schellyne. The decree against them was a personal one, and both the decree and execution were general. The decree awarded an execution de bonis propriis, and not against the lands which were devised or descended to them; and these premises were sold on such execution as the property of E. Kane and D. Van Schellyne. That sale, therefore, could not divest the lien of the mortgage in question; and, besides, neither Bloodgood nor the plaintiff were parties to that suit, and consequently cannot be affected by the decree.
This bond and mortgage, given by E. Kane and wife to Thomas Bloodgood, acting executor of the estate of Thomas Tom, deceased, were given to him in his capacity of executor and for moneys belonging to the personal estate of Thomas Tom; and this is conceded in the opinion of the court below. This bond and mortgage is shown by the evidence in the case to belong to the estate of Thomas Tom, deceased, and to be assets in the hands of Bloodgood as executor and of the plaintiff as administrator. The bond and mortgage belonging to the estate of Thomas Tom, this suit to foreclose the same could properly be brought by the plaintiff as administrator de bonis non, c., of Thomas Tom, with the will annexed. (14 Mass., 329; 2 Hill, 210, 213, 214; 2 D. E., 477; 3 Barn. and Ald., 360; 1 Paige, 20; 1Barb. *Page 547 Ch. R., 260; 2 Paige, 15, 289; 5 Paige, 539; Code, §§ 111, 113; 2 R.S., 72, § 17.) I will not stop to inquire whether the heir of the mortgagee should not have been made a party; for no such question is raised by the pleadings, and the defect, if such it be, is not vital to the character of the bill and the relief. (Story's Eq. Pl., §§ 74, 200, 75, 236.) The executor or administrator is deemed in equity the sole party entitled to the mortgage debt, and therefore is entitled to sue upon the mortgage for a foreclosure (Story's Eq. Pl., § 74); and if the heir of the mortgagee is to be considered a proper party at this day, which I very much doubt, I do not think he is an indispensable one (4 Kent's Com., 160, note "a," 161, 156, 159; 11 John.,
534; 2 Barb. Ch. R., 135; 3 Barb., 305); and as the objection was not raised by the pleadings, and does not appear to have been raised at all in the court below, the objection now taken should be overruled.
The other objections being disposed of, it is insisted that the bill of complaint is so defective that the plaintiff is not entitled to the relief which the evidence in the case would give him; and the defect complained of is, that the bill no where avers that the moneys for which the bond and mortgage were given belonged to the estate of Thomas Tom, or that the same were assets in the hands of Bloodgood as executor, and the court below made this a ground of dismissing the bill, holding that this objection was taken in the answers in the following allegation: "That the complainant cannot recover any money, or have anydecree in his favor, on the mortgage stated in the bill." I think the court below most clearly erred in holding that this allegation raised any such question, or was ever so intended by the pleader. It is proper to observe that this allegation in the answer follows the two defences set up in the answers, and which are, first, that no such mortgage had been executed; second, that if it had, it had been paid; and this allegation, following these defences, is most unquestionably to be referred to them. The answers deny, first, the execution of the mortgage. Then *Page 548 
comes the allegation that if any such mortgage as is set forth in the complainant's bill was ever executed it has been paid and satisfied; and then follows the allegation that the complainant cannot recover any money or have any decree in his favor on the mortgage stated in the bill. The question naturally arises, and why does he say this? The answer which the pleader furnishes, is that he cannot, for two reasons: in the first place, that no such mortgage was ever executed by Elias Kane and wife; and, second, if it was, it has been paid and satisfied. I shall assume, therefore, that no complaint is made in the answer of any such defect in the bill. The objection, therefore, was raised for the first time after the proofs were closed and on the final hearing of the case, and should not at any rate have sent the party out of court and left him remediless entirely. I am aware of the general rule that a court of equity pronounces the decree, "Secundum allegata, et probata" (2 Comst., 506); that proofs are not allowed of facts not put in issue by the pleadings, nor relief granted for matters not charged in the bill. The reason of this rule is said to be, that the adverse party may be apprised against what suggestions he is to prepare his defence. (2Comst., 506.)
This bill is not certainly calculated in any respect to mislead the defendants upon this branch of the case in preparing and making their defence. I will not go into a discussion of the provisions of the bill, but will content myself by saying that I think, upon the liberal construction which the court below were required to put upon pleadings, that the bill is sufficient to entitle the plaintiff to the relief sought. The Code was the law of the court governing this case when the decree below was pronounced; and the 176th section provides that the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party, c. *Page 549 
The mantle of charity which this statute throws over the defects of pleadings, is certainly broad enough to cover any defect in this bill. But admit the bill to have been inartificially drawn, the liberal rule of amendment should have been applied. (Code, § 173.) The party should not have been turned out of court without redress. (4 Paige, 76; 3 Id.,
507.) I advise a reversal of the decree of the court below, and the entry of a decree for complainant in conformity to the prayer of the bill.
DENIO and MORSE, Js., did not hear the argument. WILLARD, J., took no part in the decision. The other judges concurred with JOHNSON, J., in holding that the sheriff's deeds to Foster and to Whittick, under which the defendants claimed title, were void, on account of the uncertainty of the description of the lands. Also, that the plaintiff's bill did not show that the mortgage sought to be foreclosed constituted part of the assets of the estate of Thomas Tom, and that consequently he did not sufficiently show his title to it. That, upon the face of the mortgage, it appeared to be the property of Thomas Bloodgood, and if the plaintiff claimed it, the personal representatives of Bloodgood were interested in that question, and therefore necessary parties. No opinion was expressed by the court upon the other questions discussed.
The decree of the court below was reversed, and the cause remitted, with leave to the plaintiff to file a supplemental bill to bring in the personal representatives of Thomas Bloodgood as parties, and to add the necessary allegations to show title in himself to the mortgage. If that should not be done within ninety days, then the bill to be dismissed with costs. *Page 550