Willard, J.
“ The defendants, who derive their titles under the sheriff’s sale in 1831, to Whittick and Foster, cannot be prejudiced by the mortgage now sought to be foreclosed, unless they purchased with notice, actual or constructive, of the existence of that mortgage. There is no pre *516 tence that either Foster or Whittick had actual notice of the pretended incumbrance, and none in fact that the other defendants had such notice. The testimony is too slight to affect any of the parties. It would be enough, however, that Whittick and Foster purchased without notice.
It is insisted on the part of the plaintiff, that the registry in this case was constructive notice to all the parties. This is denied by the defendants, for reasons which must now be considered. This case must be determined by the recording acts as they existed at the time of the transaction. (Fort v. Burch, 6 Barb., 60.) The act of April 12, 1813, concerning deeds (1 R. L. 369, § 1), after pointing out the officers before whom the proof or acknowledgments might be taken, provides that no such acknowledgment shall be taken, unless the officers taking the same shall know, or have satisfactory evidence that the person making such acknowledgment is the person described in, and who has executed such deed, conveyance or writing, and that no such proof shall be taken unless the officer taking the same shall know the person making such proof, or have satisfactory evidence that he is a subscribing witness to such deed, conveyance or writing, and that such witness knew the person who executed the same, all of which shall be inserted in the said certificate of such acknowledgment or proof; and in case of the examination of witnesses, it shall also be the duty of such officers to set forth in such certificates what witnesses were examined before him, and the substance of the evidence by them given. The 2d section enacts that no estate of a feme covert residing in this state, shall pass by her deed, nor shall the same be recorded without previous acknowledgment taken in manner aforesaid, and made by her on a private examination apart from her husband, that she executed such deed freely without any fear or compulsion of her said husband, which shall in like manner be contained in the certificate of such acknowledgment, to be indorsed on such deed. A mortgage is a deed within the meaning of these provisions.
*517 The act of March 19, 1813, concerning mortgages (1 R. L., 372, § 1), enacts that the clerks of the respective counties in this state, from time to time shall provide fit and convenient books for the registering of all mortgages of any lands, tenements or hereditaments, situated within their respective counties; in which register shall be entered the names of the mortgagors and the mortgagees, the dates of the respective mortgages, the mortgage money, the time or times when payable, the description and boundary of the lands, tenements or hereditaments mortgaged, the times when such mortgages are registered, and a minute of the certificate of the proof or acknowledgment thereof hereinafter required; to which register all persons whomsoever at proper seasons may have recourse. The clerk was also required to record the power of sale at full length. The second section mentions the proof or acknowledgment alluded to in the first section. It enacts that every mortgage being proved or acknowledged according to law and such proof or acknowledgment certified in like manner may be registered, &c. It then declares the order of preference among several mortgages, and provides further, that no mortgage, nor any deed, conveyance or writing, in the nature of a mortgage, shall defeat or prejudice the title or interest of any Iona fide purchaser of any lands, tenements or hereditaments, unless the same shall have been duly registered as aforesaid.
The objection to the registry in this case is, 1st. It does not state the name of the mortgagee. It cannot be learnt ¡ from the registry to whom that mortgage was given. This is a material omission of a fact required to be inserted in it. Without the name of the parties it could not be so indexed as to enable a party searching for incumbrances, to find it. And if he did find it, he would not be put in possession of the information which the statute contemplates should be furnished by the registry. The 2d objection is, that it omits to state the time when the mortgage becomes due. This is expressly required by the act, and is a matter essential *518 to the interest of other incumbrancers or purchasers. The registry merely states that it is payable “ according to the condition of a certain bond,” but does not state in what manner the bond is made payable. The 3d objection is, that it does not give such minute of the certificate of the proof or acknowledgment, as to enable a party to judge of the sufficiency thereof. It does not appear from it, that the parties were known to the master before whom it was taken, nor that the wife was privately examined. These are indispensable requisites to a valid acknowledgment. The minute of the clerk should have been so framed as to inform all persons that the statute had been complied with. It was not' enough for him to say that it was duly done. It should have been shown what was done, and in what manner. We have no right, as against a bona fide purchaser, to intend that the certificate of acknowledgment contains any fact which is not therein stated. It was therefore fatally defective.
In England, it is said, the weight of authority is against notice founded on the mere registration of the deed. (4 Kent’s Com., 174; Latouche v. Durmbury, 1 Sch. & Lef., 157; Bushell v. Bushell, Id., 90.) In this country, a mortgage duly registered is held to be constructive notice to subsequent purchasers and mortgagees. But a deed' or other instrument, unduly registered, either from want of a valid acknowledgment or, otherwise, is not notice, according to the prevailing opinion in this country. (4 Kent's Com., 174.) Notice to a subsequent purchaser or mortgagee, of a prior mortgage, must be direct and positive, or implied. A notice which is barely sufficient to put the party on inquiry is not enough. Nor is a suspicion of notice sufficient. (See Paige, J., in Fort v. Burch, 6 Barb., 60—78; 4 Kent's Com., 171, 172; Tuttle v. Jackson, 6 Wend., 226, per Chancellor Walworth; and. see 3 Paige, 437; 1 Hill, 568, 571; 10 J. R., 457; 9 Id., 163; 8 Id., 137; 2 J. Ch. R., 182; S. C., 15 J. R, 555, 567; 12 Id., 452; 19 Wend., 339.) The actual possession •of a person claiming under a prior unrecorded deed, is given *519 as an instance of implied notice in Tuttle v. JacJcson [supra). But in the present case the actual possession was taken under the purchase by Whittick and Foster, and was uninterruptedly continued under the same title* till the commencement of the suit. No recognition of the mortgage in question has been shown since the sale by the sheriff in 1831, and for four years before.
A registry of a mortgage, to be constructive notice to subsequent bona fide purchasers, must be duly made in pursuance of the requirements of the law. It must be registered in the clerk’s office of the county where the lands lie. (1 R. L., 372, § 1.) It must state the mortgage money. In Frost v. Beelcman (1 J. Ch. R., 300), the mistake was in the amount secured by the mortgage. The registry stated it at $300, whereas by the mortgage it was $3,000. The registry was in other respects correct. The registry was held to affect the purchasers to the extent of the sum mentioned in it. The purchaser, says Kent, is not bound tó attend to the correctness of the registry. It is the business of the mortgagee, and if a mistake occurs the consequences lie between him and the clerk, and not between him and a bona fide purchaser. Upon the question, whether an unauthorized registry of a mortgage, in a case where the proof or acknowledgment has been defective, would charge a purchaser with notice, Chancellor Kent remarks, that, “ the better opinion in the books seems to be, that it would not be notice, and that equity will not interfere in favor of an incumbrancer when he has not seen that his mortgage was duly registered.” Although the case of Frost v. Beelcman was reversed by the court of errors on appeal (18 J. R., 544), it was on a point not affecting this question, and Ch. J. Spencer, who delivered the prevailing opinion in the court of errors, did not differ from the chancellor on the question of notice. It is an established rule in equity to give no assistance against a purchaser for a valuable consideration without notice. (Per Kent, Chancellor, in Frost v. Beckman, supra.)
*520 On the subject of registration, Judge Stoky uses this language. (1 Story Eq., § 404.) But this doctrine as to the registration of deeds being constructive notice to all subsequent purchasers, is not to be understood of all deeds and conveyances which may be de facto registered, but of such only as are authorized and required by law to be registered, and are duly registered in compliance with law. If they are not authorized or required to be registered, or the registry itself is not in compliance with the law, it is to be treated as a mere nullity, and then the subsequent purchaser is affected only by such actual notice as would amount to a fraud.
If we could assume, without proof, that the defendants knew of the existence of the registry in question, it would not avail the plaintiff. Such presumption could not be made without assuming that they knew that the registry was void. They would have had a right to disregard it altogether for the defects which have been pointed out. It would be against all sound doctrine to hold a void registry, notice of anything.
The plaintiff’s case is not entitled to any favor. It is an attempt to enforce a stale demand given about thirty years before the suit was brought, and without the slightest act of recognition of its existence, for about eighteen years. The plaintiff is entitled only to the application of the strictest rules of law. By these rules the parties who defend under the sheriff’s sale must be treated as bona fide purchasers without notice of an unregistered incumbrance. This amounts to a valid defence.
II. The bill does not show any right of the plaintiff in this case to prosecute this action. If the money for which the bond and mortgage were given belonged to the estate of Thomas Tom, the action to enforce payment might be brought in the name of Thomas Bloodgood, as executor, or in his own name. (Merrett, ex., v. Seaman et al., 6 Barb., 330.) In such case, on the death of Bloodgood, the action might be brought in the name of the administrator of Thomas Tom, *521 with the will annexed, or perhaps in the name of the personal representatives of Thomas Bloodgood. But the difficulty is, the bill no where avers that the money for which the bond and mortgage were given belonged to the estate of Thomas Tom, or that it was assets in the hands of Blood-good, as executor. The words in the commencement of the • bond annexed to the name of the obligee, viz.: “ acting executor of the estate" of Thomas Tom, deceased,” are merely words of description. The obligation to pay is to “ the said Tilomas Bloodgood, or to his certain attorney, heirs, executors, administrators and assigns.” There is not a word in the condition of the bond alluding to the representative character of Bloodgood. It is clearly payable to him and to his representatives.
The bill does not aver that the assets of Thomas Tom ever came to the hands of Bloodgood. It merely states that he had qualified as executor before the bond and mortgage were given. It states that Bloodgood has died, and after his death letters of administration with the will annexed, of the goods, chattels and credits of the said Thomas Tom, were granted and committed to the plaintiff. It does not even state, as is usual in such cases, that administration of the goods, chattels and credits of Thomas Tom, which remain unadministered by Thomas Bloodgood, the deceased executor, was committed to Peck, &c.
There were facts proved which would, under proper pleadings, warrant the belief that the fund secured by the bond and mortgage, belonged to the estate of Tom. In ordinary cases an amendment would be allowed upon terms. But the defendants have a right to raise this objection at the hearing (1 Barb. Ch. R., 320, 321), and it is matter of discretion whether an amendment shall be allowed or not. If the want of parties is insisted on in the answer, and the plaintiff nevertheless goes to a hearing without an amendment, the court in its discretion may refuse to let the cause *522 stand over for an amendment and dismiss the bill with costs. (Van Eps v. Van Deusen, 4 Paige, 64-75.)
The objection is taken informally in the answer, but it is nevertheless raised; it says, “ that the complainant cannot recover any money or have any decree in his favor on the mortgage stated in the bill.” This allegation is entirely , senseless, unless its object was to insist that the plaintiff was not a proper party.
The objection in the case is wholly to the plaintiff as a party. Under certain circumstances he would be a proper party. The omission to set out these circumstances in the bill, creates the objection to the plaintiff as a proper party. And the question is, shall the court order the cause to stand over to make that amendment? Has the plaintiff such a clear, absolute right to the amendment, as to require the court to permit him to make it either with or without terms? Even the 173d section of the Code does not entitle the plaintiff to the amendment as matter of right. The cause must be governed by the practice ,of the court in analogous cases.
When a party is asserting a stale and long dormant demand against innocent and Iona fide purchasers, who have parted with their money on a full reliance that the property purchased was unincumbered, or when an ungracious defence is attempted to be set up against a just demand, the courts hold the parties to their strict rights. The practice with respect to refusing to set aside regular judgments to let in a defence of the statute of limitations, or to enable a defendant to take an advantage of his adversary in pleading or the like, are instances of the latter. (2 Str., 1242; 1 W. Bl., 35; 2 Salk., 518; 4 Taunt., 885.) And refusal of amendments in a writ of right, are exemplifications of the former. (Chadwood v. Morgan, 4 Bos. and Pul., 64—66; and see Hawkins v. Barney, supra; 5 Pet., 447-466; Bell v. Morrison, 1 Peters *523 U. S. Rep., 360; Wellings v. Shaw, 7 Taunton, 608; A'Court v. Cross, 3 Bing. Rep., 329.)
Chief Justice West well observes in one of the cases; (3 Bing., 329), “that long dormant claims have often more of cruelty than of justice in them. Christianity forbids us to attempt enforcing the payment of a debt which time and misfortune have rendered the debtor unable to discharge.” These objections acquire increased force when the attempt to enforce them is not against the party primarily liable, but against innocent parties, who if they suffer must suffer without redress.
Without adverting to the strong probability that the mortgage was given originally, upon no new consideration, but to secure an old debt of Elias Kane & Co.; that it was subsequently paid or otherwise arranged by some of the parties to the original debt; the delay of eighteen years from the last payment of interest before the commencement of the suit, unexplained by any other hypothesis than payment, strips the complainant of all claims to the favor of the court. The original mortgagee, Bloodgood, lived sixteen years after the last payment. Why did he thus remain silent ? Why suffer the defendants and others to purchase the premises and make valuable improvements without objection? These and other questions that may be asked, lead to the conclusion that the present is not a case in which the plaintiff should be permitted, by an amendment, to increase his chance of coercing payment of the sum claimed.
The objection on the score of parties, and the insufficiency of the registry, is enough to entitle all the parties who have answered, to a decree dismissing the bill with costs. Without examining the other points the bill must be dismissed without costs.
In accordance with that opinion a decree was entered dismissing the complainant’s bill, which decree was affirmed *524 by the general term of that court. And thereupon the complainant brought this appeal.
A. C. Paige, for the appellants.
D. Buell, for Schenectady and Troy Railroad Co.
R. W. Peckham, for the other defendants.
Johnscot, J.
By the law of this state in respect to the registration of mortgages, which was in- force at the time when the mortgage under which the plaintiff claims, was executed and attempted to be put upon record (May 7th, 1817), it was provided “ that no mortgage nor any deed, conveyance or writing in the nature of a mortgage, shall defeat or prejudice the title or interest of any lona fida purchaser of any lands, tenements or hereditaments, unless the same shall have been duly registered as therein aforesaid. (1 R. L., 373, § 2.) Section 1, provided, that in the register shall be entered the names of the mortgagors and mortgagees, the dates of the respective mortgages, the mortgage money, the time or .times when payable, the description and boundaries of the property mortgaged, the times when such mortgages are registered, and a minute of the certificate of the proof or acknowledgment thereof. Section 4, provided, that it should not be necessary on registering any mortgage to record or register at length the certificate of the proof or acknowledgment thereof.
The question then arises whether, in this case, a due registration of the mortgage in suit is shown. The entry upon the register commences as follows: “ Registered for and at the request of Thomas Bloodgood, of the city of New-York (acting executor to the estate of Thomas Tom, deceased). Memorandum, that on the 1st day of May, 1817, Elias Kane and Deborah his wife, for and in consideration of the sum of $13,000, hath mortgaged all those two tracts, &c., describing *525 them. Provided always, and these presents are upon this express condition, that if the said Elias Kane, his heirs, executors and administrators, do and shall well and truly pay or cause to be paid, unto the said party of the second part, his certain attorney or attorneys, heirs, executors, administrators or assigns, the sum of $13,000, &c., with lawful interest, in the manner particularly specified in the condition of his certain bond or obligation bearing even date herewith, executed by the said Elias Kane, one of the same parties of the first part, to the said party of the second part, that then, &c., these presents, &e., shall cease and be void.” Then follow a power of sale in the usual form to “ the said party of the second part,” and the registry concludes as follows, “which said mortgage was on the 6th day of May, 1817, duly proved by Elias Kane and Deborah Kane his wife, the mortgagors within named, before Thomas Bridgen, one of the masters in chancery of the State of New-York. Registered the 7th day of May, 1817, at six o’clock A. M., Jellis A. Fonda, clerk.” The register contains no metition of the name of the party of the second part to the mortgage except as above set forth.
The first objection made to the sufficiency of the registry is, that the name of the mortgagee is not entered. It seems to me impossible to say that in this respect the statute is complied with. It is true that the name of “ Thomas Blood-good (acting executor,” &c.,) who was in fact the mortgagee, appears at the commencement of the registry, but the entry-must be taken as it stands. So regarded, all that the registry affirms is that the mortgage was registered for and at Blood-good’s request. Whether it was. a mortgage to him or to Thomas Tom whose executor he was, or to some third person, and assigned to Tom in his lifetime, or to Bloodgood after his decease, the entry upon the register affords no means of determining, nor grounds even of conjecturing. It is no better, therefore, than if the name had been entirely omitted. I do not think we are at liberty to speculate upon *526 the materiality of the omission. The legislature considered a statement of the mortgagee’s name necessary, and have prescribed in terms 'that it should be stated. They had the power to consider and determine what was material to be stated, and we have no power to review their determination. In this particular the register is defective. It cannot be aided by the entry of the name of the mortgagee in the index of mortgages kept in the clerk’s office. In no event could that entry be taken to be a part of the registry. It does not appear when it was made in point of fact, and no law required or authorized it to be made until the passage of the act (ch. 313, Laws of 1826), which provides for the making of indexes of deeds and mortgages on record in county clerks’ offices.
In the second place it is objected that the time or times, when the mortgage is payable are not stated. The register contains everything upon this subject which is contained in the mortgage, and if it were material to the determination of the case, I should be inclined to think that sufficient, although there is much force in the argument that the sum for which the mortgage was given might, on the same ground, he allowed to be omitted by a similar reference to the condition of the bond. It is next objected that the register contains no sufficient minute of the certificate of the proof or acknowledgment of the mortgage. The minute is that the mortgage was duly proved by Elias Kane and Deborah his wife before Thomas Bridgen, master in chancery, and the date is given. I think the object of the provision in the statute was to enable the party examining the records to determine, upon inspection of the minute of the certificate, whether the acknowledgment or proof was in fact sufficient. To that end it is necessary that the substance of the proof or acknowledgment should appear. In this case, besides the objection that the minute is of a proof and not an acknowledgment, which the certificate on the mortgage proves to have been the fact, the clerk has completely substituted his *527 judgment for that ox the party. His minute is, that the mortgage was duly proved and that is all the information which is given as to the manner of the proof, or rather of the acknowledgment. This is quite insufficient to enable any one to form a judgment upon the sufficiency of the acknowledgment ; and unless I have mistaken the intent of the statute, is conclusive against the registi’ation. Having thus arrived at the conclusion that the registration is not sufficient under the statute, the next inquiry is whether the defendants are Iona fide purchasers of the lands in question and so entitled to be preferred to a mortgagee whose mortgage is not duly registered.
It is not contended on behalf of the appellants, nor is there upon the evidence any ground to contend, that any of the parties interested in the lands covered by the mortgage had any actual notice of its existence.
Nor is it contended that the Schenectady and Troy Railroad Company have not paid a valuable consideration, nor upon the evidence is there any room so to contend.
As to the widow and heirs of John Whittick it is contended that John Whittick was not a purchaser for a valuable consideration, and that they are therefore not so situated as to avail themselves of the defective registry.
The premises of which these parties are now in possession and the title to which it is claimed is now vested in them free from the lien of the plaintiffs’ mortgage, are a part of two hundred acres or thereabouts, of lands, which were purchased by one Salmon H. Foster, at a sheriff’s sale in the year 1830, and conveyed to him by the sheriff by deed dated November 4th, 1831, and recorded on the same day. The deed recites that the lands were struck off to Foster at $1,390, and acknowledges the payment of the consideration.
On the 11th day of November, 1831, Foster and his wife conveyed the same premises to John Whittick. The deed acknowledges the payment of the consideration money, $1,390, and it was recorded November 22d, 1831.
*528 John Whittick was in possession under these conveyances, claiming title until his death, when his widow and heirs, the parties whose interest we are now considering, succeeded to his rights.
The case contains no other evidence to show a purchase for value by Foster or Whittick, and the question then is, whether the recital in the sheriff’s deed of the receipt of the consideration from Foster, or the like recital in the deed from Foster to Whittick, is competent and sufficient evidence, prima facie, to show the payment of value upon an issue as to their being bona fide purchasers.
The only case which I have seen which seems to bear upon this point is Jackson v. McChesney (7 Cow., 360). It was an ejectment, brought upon a mortgage given by one Groves to the lessor of the plaintiff. Prior to the registry of the mortgage and on the 7th January, 1811, Groves quit-claimed to one Wright by a conveyance acknowledging the receipt of the consideration money, about $200. There was no proof of actual payment. The plaintiff insisted that such proof was necessary to protect the vendee as a Iona fide purchaser. Walworth, C. J., held that the acknowledgment in the deed was prima facie evidence of payment. The supreme court held the ruling to be right. Sutherland, J., delivered the opinion of the court. “ The acknowledgment in a deed of the receipt of the consideration money is prima facie evidence of its payment. It is equivalent to, and like a receipt for money. It is liable to be explained or contradicted, but until impeached it is legal and competent evidence of payment. Nor is its operation confined to the immediate parties to the deed. It does not operate by way of estoppel, but as evidence merely, and must have the effect of sustaining the deed by establishing prima facie the consideration for which it was given, against any person who may seek collaterally to impeach it. (Kip’s executor v. D niston, 4 John., 26; Shepard v. Little, 14 John., 210; Thallhimer v. Brinckerhoff, 6 Cow., 102; 2 Phil. Ev., 62, *529 note b.) When a bill is filed to set aside a deed as fraudulent, and the grantee in his answer alleges that he was a bona, fide purchaser, without notice of the plaintiffs’ claim, he must aver and prove, not only that he had no notice of the plaintiffs’ rights before his purchase, but that he had actually paid the purchase money before such notice. Even if the purchase money be secured to be paid, yet if it be not in fact paid before notice, it will not sustain the plea of a purchase for a valuable consideration without notice. But there is no analogy between .those cases and an action of ejectment, where the strict legal title must prevail. * * *
Wright then was a bona fide purchaser without notice of the mortgage, and held the land discharged from its lien.”
This case was decided under the act of 1801, concerning mortgages, which was in its terms as to this point, identical with the act of 1813, which applies to the case before us.
I do not see, upon general principles, how the acknowledgment of a fact in a deed can be deemed evidence of the fact against strangers, and I feel almost as much difficulty in admitting that a recital in a deed can be evidence against one claiming under the same grantor by a prior title. (C. & H., notes, 1236, and cases cited.) This I think must be taken to be the utmost extent to which Jackson v. McChesney can be conceded to go, for though the language of the learned 0 judge is much broader, the case before him did not require anything more. Kip v. Deniston, holds, that an acknowledgment in a conveyance by two trustees of the receipt of the consideration money, does not render one responsible for the money received and misapplied by the other. Shepard v. Little, holds, that the acknowledgment of the payment of the consideration in a deed does not preclude the party in an action to recover the consideration, but that he may by parol show it to be unpaid. Thallhimer v. Brinckerkoff, holds that the acknowledgment by an attorney of tho receipt of the consideration money in a deed executed by him as attorney, is prima facie evidence of the receipt of the money *530 by the attorney. But I do not see that the doctrine of either of these cases goes at all to sustain the point to which they appear to be8cited in Jackson v. McChesney.
I do not think, therefore, that we have any authority for saying that in a proceeding in chancery to foreclose a mortgage the recital in a sheriff’s deed upon a sale on execution against the mortgagor on a judgment subsequent to the mortgage, is evidence of payment of the consideration, against the prior mortgagee.
If the court differ with me, however, in this conclusion, and are of' opinion that such recitals are evidence, prima facie, of a valuable consideration paid, then the principle will go far enough to cover not only the case of Whittick’s widow and heirs, but also of Hallaras, who, by the same sort' of evidence is shown to be a purchaser for value from Whittick.
The' residue of the case I shall consider upon both suppositions, first, assuming that all these persons paid value upon their purchases and had no actual or constructive notice of the prior mortgage.
It is obj,ected by the complainants, that under the sheriff’s deed the title to the premises did not pass by reason of the uncertainty- of description in the deeds. If this objection «shall prevail it will apply to the cases of all the defendants against whom the appeal has been taken.
The sheriff’s deed to Whittick, after reciting that he exposed to sale all the right, &c., of, in and to all that certain piece or parcel of land, being part of the patent known as Swits’ patent, situate in the town of Niskayuna, “bounded on the north by the Mohawk river, on the south and east by lands belonging to Derick Van Vranken and others, and on the west by lands of the said Derick Van Vranken, and others, and supposed to contain four hundred acres;' whereof about one hundred acres were struck off to the said John Whittick for the sum of $45.0 being the highest sum, bid for the same.” proceeds as follows:. “Now know ye therefore that I the *531 said sheriff aforesaid for and in consideration of the said sum of $400 to me in hand paid, do grant, bargain and sell the before mentioned premises to the said John Whittick, his heirs and assigns forever.' Dated, October 15,1831.”
The sheriff’s deed to Foster, dated. November 4, 1831, contains a similar general description, but states that “ two hundred acres were struck off to ” him, for $1,390, and grants, in the same manner as in the last mentioned conveyance, “ the before mentioned premises.”
In point of fact at the time of the sale there were two distinct parcels of land in the town of Niskayuna, and in Swits’ patent, belonging to Kane and wife, lying south of the Mohawk river, and separated from each other by a piece of land of about eighty acres belonging to Derick Van Vranken. The western piece, consisting of one hundred and eleven acres, three roods and twenty-three rods, was taken possession of by John Whittick under his purchase. The eastern piece, consisting of one hundred and ninety-nine acres, two roods and four perches, was regarded by the parties as purchased by Foster, and was, as has been already stated, possessed by Whittick, to whom Foster conveyed his purchase.
The description in the sheriff’s deeds of the property exposed for sale is of a single parcel supposed to contain four hundred acres. The town and the patent agree with the parcels before mentioned. It is described likewise as lying on the south side, of the Mohawk river, as those parcels were actually situated. It is said to be bounded on the south and east by lands of Derick Van Vranken and others. The western parcel of one hundred and eleven acres, was bounded on the south and east by lands of Derick Van Vranken. The eastern parcel was bounded on the south by lands of Derick and Claus Van Vranken, but upon the east it was bounded by the lands of Peter N. or Garret I. Van Vranken. The sheriff’s deed makes Derick Van Vranken’s land the western boundary. It was the western boundary of the eastern parcel, and the eastern boundary of the west *532 ern parcel, which was bounded on the west by the lands of Thompson.
The general rule in regard to the construction of the description of the premises in a deed is one of the utmost liberality. The intent of the parties, if it can by any possibility be gathered from the language employed, will be effectuated. To this end parts of the description may be rejected, though upon the face of the deed they seem as material as the parts which are left. This only is requisite, that after subjecting the description to every modification which the actual condition of the premises may require, there must be left some substantial designation of the thing to be conveyed, so that the court can see, looking at the property in the condition in which it was at the time of the deed, that the description can be fitted to it and was intended by the parties to relate to it. (Loomis v. Jackson, 19 John., 449, and cases there cited, &c.; Rollin v. Pickett, 2 Hill, 552; Jackson v. Marsh, 6 Cow., 281.) Looking at the description in the sheriff’s deeds, I confess that I have found myself wholly unable to identify the particular parcels sold to Whittick and to Foster. Two hundred acres are struck off to one and ■about one hundred to the other, but there is no clue whatever to determine which acres were sold to either, nor do I find any general description of the land except that which is to be gathered from the designated boundaries. It is not said to be or to have been the land of Kane, or of any one else. The sheriff exposed to sale, as the deed recites, “ all the right of the said Elias Kane and others” (the other defendants, I suppose), of, in and to all that certain piece or parcel of land, supposed to contain four hundred acres. If Kane had desired to ascertain what lands had been sold upon the execution, nothing in the deed would have given him the least ground to imagine that the land west of Derick Van Vranken’s land, had been sold. The case seems to me to come within the qualification of the general rule stated by the supreme court in Jackson v. Clark (7 John,, 223). *533 “If there are certain particulars once sufficiently ascertained which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not vitiate the grant. But when the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass except such as will agree to every part of the description.” The boundaries are the only means of ascer tabling the premises. The only western boundary is the land of Derick Van Vranken ; east of that boundary was a parcel of one hundred and ninety-nine acres of land which appears to have belonged to Kane and wife. In this parcel I am unable to locate the land of about one hundred acres bid off by Whittick, and as the deed to him preceded that to Foster, which was of two hundred acres of the same parcel, I am equally unable to determine where that was to be found. Even if these deeds could be sustained between private parties, I think as conveyances by a sheriff they are not sufficient. The distinction was adverted to by the supreme court, in Jackson v. Rosevelt (13 John. R., 97). The court say: “ The least that can be required of the officer in making the sale, is, so to locate the lands as to afford means to the bystanders and bidders of informing themselves as to the value.” I see no way in which a party entitled to redeem could exercise his right as to lands sold in this manner by a sheriff. Certainly, if the certificate of sale was in the terms of the subsequent deed, a party would look in vain to find what two hundred acres were struck off to Foster, and what “ about one hundred ” were bought by Whit-tick. If the court agree with me in this conclusion, then none of the defendants have acquired any title under the sheriff’s deeds, and as against them, the mortgage, though unregistered, is effectual.
If. however, the deeds from the sheriff should be deemed sufficient in form to convey the title of the defendants in the execution, two other questions remain to be considered.
*534 The first is, whether a misrecital of the execution in the sheriff’s deed will prejudice the right of the purchaser.
The decree of the court of chancery on which the execution was issued was made in a suit in which John Whit-tick was plaintiff and Elias Kane and Deborah his wife, Theodore Van Schellyne, Rensselaer Van Schellyne, Cornelius Van Schellyne and Elizabeth Van Schellyne (by Cornelius Van Schellyne Kane, their guardian ad litem), and Daniel Rogers, Jr., and Samuel Sherwood, were defendants. It bore date August 28, 1829, and awarded to the complainant execution for $4,235.24J with interest from June 21, 1829, together with costs to be taxed, against the goods and chattels, lands and tenements of the said defendant’s, Elias Kane and Deborah Kane his wife, and against the lands and tenements whereof Dirck Van Schellyne, named in the bill of complaint, died seised. The execution itself is not in evidence, but the complainant has admitted, that in May, 1830, an alias fi.fa., was issued to the sheriff of Schenectady, on the said decree; that it has not been returned and cannot be found. I suppose that this admission must be taken to admit an execution warranted by the terms of the decree.
The sheriff’s deed to Whittick recites an alias fi.fa., out of chancery, dated May 25, 1830, against the goods and chattels, lands and tenements of Elias Kane and Deborah his wife, and all the other parties to the suit by name, and for want of personal property commanding him to make the amount, of the lands and tenements whereof the said Elias Kane and Deborah his wife, and Theodore Van Schellyne, Rensselaer Van Schellyne, Cornelius Van Schellyne Kane, their guardian ad litem,, and David Rogers, Jr., and Samuel Sherwood, were seised, on the 25th day of May, 1830. The deed to Foster contains nearly the same departures from the decree, with the additional statement that the decree was in favor of Salmon H. Foster. I am inclined to the opinion, that these misrecitals, though of so gross a character, will not prejudice, where the sheriff actually had (as he must in this *535 case be taken to have had), authority by the decree and execution to make the sale, and where he appears to have acted upon that authority. Jackson v. Pratt (10 J., 397), oral Jackson v. Streeter (5 Cow., 530), distinctly recognize this principle, that a misrecital of an actual power shall not prejudice. Jackson v. Roberts (11 Wend., 427), recognizes these cases as correctly decided. The other question above alluded to, is, whether the title of the purchaser upon execution on the decree before mentioned does not override the title derived from Kane and wife, and Dirck Van Schellyne, by the mortgagee, upon the ground that the decree is founded upon the liability of the defendants as devisees of Cornelius Van Schellyne to one of his creditors. This position, which seems to be advanced with some confidence by the counsel of the defendants, makes it necessary to state the nature and subject of the suit in which the decree was rendered.
The ancestor of John Whittick, the complainant in that suit, conveyed certain lands to Cornelius Van Schellyne by deed absolute, intended as a mortgage. Cornelius Van Schellyne died, leaving a will by which all his estate was devised to his daughter Deborah, wife of Elias Kane, and to his son, Derick, as tenants in common, and his said son and son-in-law were appointed executors. He died prior to January 1, 1813, seised of the lands conveyed to him by Whittick, as above- mentioned, and also of the lands after-wards mortgaged to Bloodgood. His devisees conveyed the Whittick lands to Rogers and Sherwood, upon a sale to them. In 1821, Whittick, the complainant, filed -his bill against Kane and wife, Dirck Van Schellyne and Rogers and Sherwood, stating the foregoing facts, and also that Rogers and Sherwood were not bona fide purchasers, and praying an account and other relief. Before the hearing of the cause, Dirck Van Schellyne died, and the suit was revived against his children, Theodore, Elizabeth, Rensselaer, and Cornelius. In October, 1828, a decree was made, declaring the conveyance a mortgage, and that Rogers and Sherwood being bona *536 fide purchasers could not be disturbed in their title, and directing an account of the original debt from Whittick, and of the payments on account thereof, of the rents and profits of the lands, and of the purchase money received from Rogers and Sherwood, and an inquiry whether the heirs oí Dirck Van Schellyne had received anything from the estate of .their father. The master’s report, dated June 30,1829, showed a balance due to Whittick of $4,235.24. The amount as stated in the account, with which the defendants were charged for the price and .interest thereon received on the sale to Rogers and Sherwood was $4,804.16, and as the whole balance due was less than this sum, it is apparent that at the death of Cornelius Van Schellyne, he had not been paid, the whole debt due from Whittick, and held the land therefore as mortgagee in possession, with his mortgage debt unpaid. Whittick, the complainant, was therefore in no sense his creditor. Upon the coming in of the master’s report, the cause was again brought to a hearing, and the report confirmed and execution thereupon awarded, as has been before stated. It is evident that, this decree was founded upon the personal liability of Kane and wife,- and Dirck Van Schellyne, by reason of their sale of the land, and was not founded upon a debt of Cornelius Van Schellyne. This ground, therefore, fails the defendants. There is nothing in the nature of Whittick’s claim which gives to the decree in his favor a priority over the mortgage to Bloodgood.
Certain other grounds are taken by the defendants against the plaintiff’s right to recover, of which that most relied upon is, that .the debt for which the mortgage was given has been paid.
In order to make this out, it is. contended that the original debt to Thomas Tom was due from E. Kane & Co., and it is argued that thi.s debt must be presumed to have been paid, as the bonds of E. Kane & Co. did not come into the hands of Peck, the present plaintiff. It appears from the inventory of Tom’s estate, that E. Kane & Co. were indebted to him *537 upon bond in the amount of $13,141, and no claim appears upon that inventory against Elias Kane alone. In 1828 Elias Kane was discharged under the insolvent act. In his petition and inventory he stated that the debt to Bloodgood arose from money loaned by Thomas Tom to E. Kane & Co., aboutlS04. Hesays “theoriginalamountwasabout$13,000, and on the 1st May, 1817, I gave my own bond to Blood-good (T. Tom’s executor) secured by a mortgage; part of the mortgaged property has been sold and the remainder is not worth more than the balance due on the bond.” The balance due on account of principal he states at $5,890.83. This latter paper is one of the defendant’s (The Troy and Schenectady Railroad Co.’s) exhibits. Without it, and I hardly think it evidence against the plaintiff, no sort of case is made out from which we should be authorized even to conjecture that the debt might be paid. Regarding it as evidence, it seems to me to favor the supposition that when E. Kane gave his bond in 1817, the personal responsibility of the other original debtors was discharged. Nor is there anything in the delay to prosecute the mortgage which creates a presumption of payment. The bond became due in 1820, and the foreclosure suit was commenced in 1846. By the indorsements upon the bond, it appears that the interest was paid up to 1826, and after that two further payments were made, one October 24, 1826, of $4,609.17, the other of $2,500, January 8, 1827. This last payment was also proved by the witness who handed the money to Bloodgood. On this branch of the case I have no. hesitation as to the correctness of the conclusion that the bond and mortgage have not been paid, and are not subject to any presumption of payment.
The only remaining point which I think it necessary to consider is the objection that the plaintiff does not show any title to the bond and mortgage, and that the personal representatives of Bloodgood are necessary parties. The bond to Bloodgood was not in terms to him as acting executor of *538 Thomas Tom, but only added the words “ acting executor,” &c., to his name. Upon its face, therefore, it was at least doubtful whether the bond was his own property or that of the estate of Thomas Tom. He might undoubtedly have proceeded upon it in chancery as executor, averring that it belonged to the estate. The plaintiff makes title by no averment. He does not allege that it belonged to Tom’s estate. That question is one in which Bloodgood’s personal representatives have an interest, and in which also the defendants have an interest, for no decree in this suit against' them would be any protection in a suit by Bloodgood’s personal representatives. If in such a suit it should turn out that the bond and mortgage were Bloodgood’s, the decree here would be no answer to the claim.
The only statement in the answers which can be construed as a setting up of these objections is the phrase, “they further answer and say that the complainant cannot recover any money or have any decree in his favor on the mortgage stated in the bill.” I do not think this was such a statement of the objection as to put the plaintiff in any way upon his guard, and so to influence us in the exercise of our discretion as to the permitting of an amendment. Entertaining the views which I have expressed, I think the decree dismissing the bill should be reversed, and that leave should be given to the plaintiff to file a supplemental bill, to bring in the personal representatives of Thomas Bloodgood, and to make the necessary averments in respect to his title as administrator, with the will annexed, to the bond and mortgage in suit, and that such leave should be given without costs.
Mason, J.
The most important question in this case is, whether the mortgage of Elias Kane and"wife was so registered as to furnish constructive notice thereof to subsequent bona fide purchasers of the mortgaged premises. The court below held the registry to be so defective as to be ineffectual as a notice to subsequent bona fide purchasers, and holding *539 the defendants to be such, upon this ground alone decided the whole case upon its merits against the plaintiff. I am constrained to say, after a very careful examination of the question, that it seems to me quite clear that the court below erred in holding the registry of this mortgage insufficient to furnish constructive notice of the lien pf the mortgage to the defendants, and those under whom they claim. The court below were right in holding that the sufficiency of the registration in this case must be determined by the recording acts as they existed at the time the registration in question was made. (Fort v. Burch, 6 Barb., 60.) This act required the clerks of the different counties to keep a book for registering mortgages, and to enter therein the names of the several mortgagors and mortgagees, the dates of the respective mortgages, the money, the time or times when payable, the description and boundaries of the lands, the times when such mortgages are registered, and a minute of the proof or acknowledgment thereof, and when registering the same they were required to record at length the special power of sale if any be contained therein; and the same section provides, that all persons whomsoever shall have recourse to such register at proper seasons. (1 R. L., 372, § 1.) By the next section it is provided that no mortgage, nor any deed, conveyance or writing in the nature of a mortgage, shall defeat or prejudice the title, or interest of any bona fide purchaser of any lands, tenements or hereditaments, unless the same shall have been duly registered as aforesaid. (1 R. L., 373, § 2.) The object of the registry acts is to give notice to subsequent purchasers of the prior conveyance or incumbrance, and to secure subsequent purchasers and mortgagees against prior secret conveyances and incumbrances. (1 Story’s Eq. Jur., § 397; Jackson v. Sharp, 9 John., 163; Jackson v. Burgott, 10 Id., 457; Jackson v. West, 10 Id., 466.) And consequently where the subsequent purchaser had notice at the time of his purchase of the prior unregistered deed, such prior deed or mortgage shall have preference. (1 Caines’ *540 R., 82; 8 John., 137; 9 Id., 163; 10 Id., 466.) The registration is deemed constructive notice to the subsequent purchaser, and where the registration act has been substantially complied with, the law charges the subsequent purchaser with notice. The object of the registry act being to secure subsequent purchasers and mortgagees against prior secret conveyances and incumbrances, if the substantial object and design of the act are complied with in the registry, that is all that is required. (1 John. Ch. R., 288, 299; 18 John., 544, 564.)
I agree fully with the construction put upon the act under consideration by Chancellor Kent in the case of Frost v. Beekman (1 John. Ch. R., 299), and by Chief Justice Spencer in the same case, in the court of errors. (18 John., 564.)
The chancellor says: “ The true construction of the act appears to be that the registry is notice of the contents of it and no more, and that the purchaser is not to be charged with the contents of the mortgage any further than they may be contained in the register.” He adds, the act, in providing that all might have recourse to the registry, intended that as the correct and sufficient source of information; and that it would he a doctrine productive of immense mischief, to oblige the purchaser to look at his peril to the contents of every mortgage and to be bound by them when different from the contents as declared in the registry. He states the very design,- scope and object of the registry in the following language: “ The registry was intended to contain within itself all the knowledge of the mortgage requisite for the purchaser’s safety.” Let us then examine the registry in question, and see if it meets these requirements of the statute. The registry contains the true date and amount of the mortgage, and contains an accurate description and boundary of the premises. It gives the names of the mortgagors, and states they have for and in consideration of $13,000, mortgaged the lands (giving description and boundaries), and then the registry states that if the mortgagors *541 shall pay or cause to be paid the said sum of $13,000 with lawful interest in the manner specified in a certain bond bearing even date with the mortgage, and executed by Elias Kane, one of the mortgagors, then everything contained in said mortgage shall cease and be void; but in case of default in the payment of all or any part, it then goes on and gives the power of sale in the usual form. The registry also contains a minute of the certificate of the proof of acknowledgment in the following words, “ which said mortgage was on the 6th day of May, 1817, duly proved by Elias Kane and Deborah Kane his wife, the mortgagors within named, before Thomas Bridgen one of the masters in chancery of the State of New-York.” The name of the mortgagee is not given in the registry, unless the statement at the commencement of the registry shall be deemed to furnish it. It states that the mortgage was “ registered for and at the request of Thomas Bloodgood of the city of New-York, acting executor to the estate of Thomas Tom, deceased.” Now, it seems to me that this registry contains all that is necessary to answer the objects and purposes of the statute. That it comes up fully to the requirements of the rule stated by Chancellor Kent and Chief Justice Spencer, in the case of Frost v. Beehman ; that in short, this registry contains within itself all the knowledge of the mortgage requisite for the purcha-. ser’s safety, and in fact all that it is important for him to know. Had these purchasers examined this registry they would have found that the man from whom they claimed to have title, had mortgaged these premises for $13,000, long before their purchase, and that such mortgage was duly acknowledged and registered, with the power of sale recorded, and that such registry was made for and at the request of Thomas Bloodgood; and had they looked at the index of mortgages! as in all probability they would had they gone to examine for mortgages, they would there have found it stated that Thomas Bloodgood was the mortgagee. It is not very important to determine whether the statement that this *542 mortgage was registered for Thomas Bloodgood and at his request is to be deemed equivalent to stating that he is mortgagee or not.
These registry acts are remedial statutes and are to be liberally construed, and when the substantial purposes of the act are complied with that is sufficient; and when the registry contains such a statement of the mortgage as the purchaser’s safety requires, if he examines the registry, all the beneficial purposes of the act are answered. (1 John. Ch. R., 299; 4 Cow., 605; 6 Barb., 69; 18 John., 564; 2 Harr. & McHenry, 19.) The next objection to this registry is, that it omits to state the time or times when the mortgage moneys became due. The registry in this respect copies from the mortgage in hcec verba all that it contains in relation to the time or times when the mortgage moneys are payable.
The mortgage refers to the bond as to the time the moneys are payable, and the registry could not well do more than state all that the mortgage contains as to the times of payment, for I do not see how the clerk could go out of the mortgage to obtain the times of payment, and he is not required to register anything contained in the bond. Be this as it may, however, I cannot think that the omission to state the particular times of payment should be deemed so important as to render the registration invalid.
There is nothing in the objection that the registry does not give such a minute of the certificate of the proof of acknowledgment as the statute requires. All that the statute says is, that the registry shall give “a minute of the certificate of the proof of acknowledgment.” This the registry does give, as we have already shown. A minute of a written contract or certificate is a very indefinite thing. It is defined to be “ a short sketch or note of any agreement or other writing.” The statement of this certificate certainly answers this definition. These are all the objections taken to the registry of this mortgage. They are, first, that the mortgagee’s name is not given in the registry; second, that the times of payment of *543 the mortgage moneys are not stated; and, third, that the minute of the certificate of proof of acknowledgment is not comprehensive enough. I think a sufficient answer has been given to them all, and that we must hold the registry sufficient. The registry was sufficient to inform any person who should have recourse to it of every fact in relation to the mortgage necessary to be known by a subsequent purchaser or mortgagee, for his protection.
The objection to the plaintiff’s recovery, founded uppn a presumption of payment arising from lapse of time, is not well taken. Such presumption can only arise from a forbearance of full twenty years, unexplained by the mortgagee. (1 John. Ch. R., 386; 5 Id., 552; 4 Kent's Com., 189, note "11 E"; 10 John., 417; 12 Id., 245; 3 Barb., 305.) The forbearance from the last payment to the commencement of this suit was but nineteen years, three months and twenty-four days.
It follows, therefore, as a consequence, that the defendants cannot be held bona fide purchasers of these premises without notice of the mortgage in question, for the registration operates as a constructive notice to all subsequent purchasers (1 Story's Eq., $ 403); and the obvious policy of the registry acts is to impose upon the party purchasing under such circumstances the obligation to search for prior incumbrances, and where the registry contains within itself all the knowledge of the mortgage requisite for the purchaser’s safety, the law charges him with notice of the mortgage-. The mortgage, was properly executed, and the certificate of the proof of execution is in strict compliance with the requirements of the statute. (2 Barb. Ch. R., 268; 2 Cow., 567; 1 Wend., 412; 11 John., 434; 24 Wend., 93; 1 Hopk., 239, 267.)
The mortgagors, Elias Kane and wife, had title to the whole of the mortgaged premises at the time of the execution of the mortgage. They first acquired title to one moiety thereof under the will of Cornelius Van Schellyne, and to *544 the other moiety from Derick Van Schellyne and wife, of the date of June 24, 1816. This deed has a subscribing witness, and the evidence in the case shows that one of the grantors and the subscribing witness were dead at the time of taking the testimony, and that the signatures of the grantors and the subscribing witness are genuine. The execution of the deed being proved, and there being a subscribing witness, the presumption of law is that the deed was delivered at the time it bears date. (2 Wend., 317, 318; 5 Id., 633; 1 Denio, 326.) The first moiety was given to the wife of E. Kane in fee by the will of her father, and as they had a child born alive of the marriage, E. Kane acquired a life estate in this moiety; and it is claimed that he had parted with this life estate by his discharge under the two-third act before the execution of the mortgage. There are several answers to this objection. It has not been even attempted to be shown that the title of his wife, Deborah Kane, as devisee and heir of this moiety, had in any way been divested previous to the' execution of this mortgage; and when her husband died, and she survived him, she became the legal owner of the whole estate. But it is very questionable whether the parol evidence given before the examiner was competent to divest his title. There is no parol evidence even of any assignment by E. Kane of his estate to an assignee; and, besides, parol evidence is incompetent to divest a title which has been previously proved (4 Wend., 560; 4 Cow., 593; 6 Barb., 607; 3 Comst., 424; 5 Paige, 104); and there is strong evidence to authorize the presumption that he never parted with his title. He was in possession from 1813 to 1829, claiming to own the premises and exercising acts of ownership over them. He made payments on the mortgage in question between 1817 and 1828, and in November, 1826, sold and conveyed one hundred and eleven acres of the premises and received the purchase money and applied it towards the payment of the mortgage.
*545 I have not been able, however, to discover upon what principle the defendants can be permitted to raise this question of E. Kane’s title. The most that can be claimed for them is, that by virtue of the sheriff’s sale and deed on that decree they acquired the title of Kane; and they stand in no better position than he did, and, being estopped, cannot deny Kane’s title. (15 Wend., 607; 3 Peters, 47; 19 Pick., 341; 4 Adol. and Ellis, 782, 809; 2 Smith’s Leading Cases, 540; 2 Barn. and Adol., 278, Pow. on Mortgages, 221, 1074, 1075; Cowp., 601.)
As to the moiety of the premises which the mortgagors acquired by grant from Derick Van Schelleyne and wife, it is proper to remark, that as these premises were conveyed by deed to the husband and wife jointly, the grantees held the fee in severalty with the right of survivorship, and upon the death of her husband Mrs. Kane took the whole fee as survivor, discharged of all claims for her husband’s debts (4 John. Ch. R., 431; 10 Id., 110, 302; 19 Wend., 178; 1 Kent’s Com., 132); and the mortgage was certainly a lien on Mrs. Kane’s remainder. In the view which I have taken of this case, I have not deemed it important to inquire whether the defendants are or are not to be deemed bona, fide purchasers within the meaning of the recording acts, which I think may well be doubted, as John Whittick took the premises purchased by him at sheriff’s sale, if the defendants’ view of the case be correct, in payment of a pre-existing debt. (4 Paige, 215, 221; 1 R. L., 373, % 2; 10 Paige, 170.)
The decree in the suit of John Whittick v. Elias Kane and others, and the sale, furnish no defence to this suit. That decree did not overreach the plaintiff’s mortgage. The bill in that suit was in the nature of a bill to redeem a mortgage by converting an absolute deed into a mortgage; and the chancellor so regarded it. (1 Paige, 206-208.) He declared the deed a mortgage, and directed a referee to take and state an account of the amount due thereon. John Whit- *546 tick did not claim in that bill to be a creditor of Cornelius Van Schellyne. He claimed to be the legal owner of the premises, and entitled to redeem; and, indeed, it appears from the master’s report on the reference that, instead of C. Van Schellyne being a debtor of John Whittick, he was a creditor; that at the time of his death there was more than $300 due on the mortgage. The chancellor found, however, that he could not allow John Whittick to redeem, because the premises had been alienated and were held by bona fide purchasers, as he held, and he consequently made a personal decree against E. Kane and Derick Van Schellyne for moneys realized by them out of these lands and received .after the death of C. Van Schellyne. The decree against them was a personal one, and both the decree and execution were general. The decree awarded an execution de bonis propriis, and not against the lands which were devised or descended to them; and these premises were sold on such execution as the property of E. Kane and D. Van Schellyne. That sale, therefore, could not divest the lien of the mortgage in question; and, besides, neither Bloodgood nor the plaintiff were parties to that suit, and consequently cannot be affected by the decree.
This bond and mortgage, given by E. Kane and wife to Thomas Bloodgood, acting executor of the estate of Thomas Tom, deceased, were given to him in his capacity of executor and for moneys belonging to the personal estate of Thomas Tom; and this is conceded in the opinion of the court below. This bond and mortgage is shown by the evidence in the case to belong to the estate of Thomas Tom, deceased, and to be assets in the hands of Bloodgood as executor and of the plaintiff as administrator. The bond and mortgage belonging to the estate of Thomas Tom, this suit to foreclose the same could properly be brought by the plaintiff as administrator de bonis non, &c., of Thomas Tom, with the will annexed. (14 Mass., 329; 2 Hill, 210, 213, 214; 2 D. & E., 477; 3 Barn. and Ald., 360; 1 Paige, 20; 1 Barb. *547 Ch. R., 260; 2 Paige, 15, 289; 5 Paige, 539; Code, §§ 111, 113; 2 R. S., 72, § 17.) I will not stop to inquire whether the heir of the mortgagee should not have been made a party; for no such question is raised by the pleadings, and the defect, if such it be, is not vital to the character of the bill and the relief. (Story’s Eq. PL, §§ 74, 200, 75, 236.) The executor or administrator is deemed in equity the sole party entitled to the mortgage debt, and therefore is entitled to sue upon the mortgage for a foreclosure (Story’s Eq. PL, § 74); and if the heir of the mortgagee is to be considered a proper party at this day, which I very much doubt, I do not think he is an indispensable one (4 Kent’s Com., 160, note "a,” 161, 156, 159; 11 John., 534; 2 Barb. Ch. R., 135; 3 Barb., 305); and as the objection was not raised by the pleadings, and does not appear to have been raised at all in the court below, the objection now taken should be overruled.
The other objections being disposed of, it is insisted that the bill of complaint is so defective that the plaintiff is not entitled to the relief which the evidence in the case would give him; and the defect complained of is, that the bill no where avers that the moneys for which the bond and mortgage were given belonged to the estate of Thomas Tom; or that the same were assets in the hands of Bloodgood as executor, and the court below made this a ground of dismissing the bill, holding that this objection was taken in the answers in the following allegation: “ That the complainant cannot recover any money, or have any decree in hisfavor, on the mortgage stated in the bill.” I think the court below most clearly erred in holding that this allegation raised any such question, or was ever so intended by the pleader. It is proper to observe that this allegation in the answer follows the two defences set up in the answers, and which are, first, that no such mortgage had been executed; second, that if it had, it had been paid; and this allegation, following these defences, is most unquestionably to be referred to them. The answers deny, first, the execution of the mortgage. Then *548 comes the allegation that if any such mortgage as is set forth in the complainant’s bill was ever executed it has been paid and satisfied; and then follows the allegation that the complainant cannot recover any money or have any decree in his favor on the mortgage stated in the bill. The question naturally arises, and why does he say this? The answer which the pleader furnishes, is that he cannot, for two reasons: in the first place, that no such mortgage was ever executed by Elias Kane and wife; and, second, if it was, it has been paid and satisfied. I shall assume, therefore, that no complaint is made in the answer of any such defect in the bill. The objection, therefore, was raised for the first time after the proofs were closed and on the final hearing of the case, and should not at any rate have sent the party out of court and left him remediless entirely. I am aware of the general rule that a court of equity pronounces the decree, “ Secundum allegata, et probata” (2 Comst., 506); that proofs are not allowed of facts not put in issue by the pleadings, nor relief granted for matters not charged in the bill. The reason of this rule is said to be,- that the adverse party may be apprised against what suggestions he is to prepare his defence. (2 Comst., 506.)
This bill is not certainly calculated in any respect to mislead the defendants upon this branch of the case in preparing and making their defence. I will not go into a discussion of the provisions of the bill, but will content myself by saying that I think, upon the liberal construction which the court below were required to put upon pleadings, that the bill is sufficient to entitle the plaintiff to the relief sought. The Code was the law of the court governing this case when the decree below was pronounced; and the 176th section provides that the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party, &c.
*549 The mantle of charity which this statute throws over the defects of pleadings, is certainly broad enough to cover any defect in this bill. But admit the bill to have been inartificially drawn, the liberal rule of amendment should have been applied. (Code, % 173.) The party should not have been turned out of court without redress. (4 Paige, 76; 3 Id., 507.) I advise a reversal of the decree of the court below, and the entry of a decree for complainant in conformity to the prayer of the bill.
Denio and Morse, Js., did not hear the argument. Willard, J., took no part in the decision. The other judges concurred with Johnson, J., in holding that the sheriff’s deeds to Foster and to Whittick, under which the defendants claimed title, were void, on account of the uncertainty of the description of the lands. Also, that the plaintiff’s bill did not show that the mortgage sought to be foreclosed constituted part of the assets of the estate of Thomas Tom, and that consequently he did not sufficiently show his title to it. That, upon the face of the mortgage, it appeared to be the property of Thomas Bloodgood, and if the plaintiff claimed it, the personal representatives of Bloodgood were interested in that' question, and therefore necessary parties. No opinion was expressed by the court upon the other questions discussed.
The decree of the court below was reversed, and the cause remitted, with leave to the plaintiff to file a supplemental bill to bring in the personal representatives of Thomas Blood-good as parties, and to add the necessary allegations to show title in himself to the mortgage. If that should not be done within ninety days, then the bill to be dismissed with costs.